[866 NYS2d 165]

CLARENCE JONES, Appellant, v 414 EQUITIES LLC et al.,
Respondents. (And a Third-Party Action.)

First Department, October 28, 2008

66

### APPEARANCES OF COUNSEL

*Pollack, Pollack, Isaac & DeCicco*, New York City (*Brian J. Isaac* and *Michael H. Zhu* of counsel), for appellant.

*Rubin, Fiorella & Friedman, LLP*, New York City (*Shelley R. Halber* of counsel), for respondents.

### OPINION OF THE COURT

McGUIRE, J.

The principal issue on this appeal is whether plaintiff, a demolition worker who fell approximately 10 to 12 feet when the permanent floor he was walking across collapsed, is entitled to summary judgment on his cause of action premised on Labor Law § 240 (1). Although the Court of Appeals has issued numerous decisions that provide important guidance in resolving the question of law on which this appeal turns, no decision of the Court of Appeals is squarely on point. Each of the parties litigating the summary judgment motion, however, can point to authority both in this Department and in the other Departments that squarely supports its position. For the reasons that follow, we conclude that Supreme Court correctly denied plaintiff's motion with leave to renew following disclosure.

Plaintiff worked as a demolition laborer on a renovation project at a five-story apartment building owned by defendant 414 Equities LLC. Defendant Artimus Construction, Inc., was the general contractor of the project and retained plaintiff's employer, third-party defendant Bronxdale Maintenance Corp., as a subcontractor. The project involved major renovations to the interior of the building, including the demolition of all interior walls, and the removal of all debris and bathroom and kitchen fixtures. Essentially, the interior of the building was being "gutted" and rebuilt. Notably, however, the building's permanent wooden floors were not to be removed in the course of the project.

On November 13, 2003, plaintiff was working on the second floor when the accident giving rise to this litigation occurred. Plaintiff described his accident as follows: "I was picking up [a] piece of the [interior] walls, like an old-fashion wall, it got cement and I was up [*sic*], I heard a loud crack and I just fell through the floor and the floor came from under me. The next

thing I know I was screaming and [some coworkers] w[ere] down, came downstairs, I was down on the next [i.e., the first] floor." Plaintiff clarified this testimony, further testifying that he was dragging across the second floor a 50- to 60-pound piece of demolished wall to place it with other debris when the portion of the floor he was walking across collapsed, causing him to fall approximately 10 to 12 feet to the floor below. Plaintiff did not "hear anything or see anything" before the floor collapsed except for the loud cracking noise. There were no holes in the second floor prior to its collapse. At the time of the accident, the only safety devices plaintiff was using were a hard hat, a pair of gloves and a cloth facemask.

On January 12, 2005, plaintiff commenced this action against the owner asserting causes of action under Labor Law §§ 200, 240 (1) and § 241 (6) and for common-law negligence. The owner answered the complaint in April 2005, and commenced a third-party action against plaintiff's employer in September 2005.

In June 2006 plaintiff moved for summary judgment against the owner on the issue of liability on the Labor Law § 240 (1) cause of action. Plaintiff asserted that he was entitled to summary judgment because (1) he was engaged in an activity protected by the statute, i.e., demolition work, (2) he was exposed to an elevation-related risk, i.e., the floor that collapsed was the second floor, and (3) the owner violated the statute by failing to provide him with proper safety devices. Plaintiff stressed that the collapse of a permanent floor, like the floor at issue, constitutes a prima facie violation of Labor Law § 240 (1), particularly where there is evidence that the floor was "rotte[d] and decayed." In support of this motion plaintiff submitted, among other things, his deposition testimony and an affidavit. In his affidavit plaintiff averred that "[p]ortions of the second floor were old, rotted and decayed."

In opposition the owner argued that summary judgment was premature because two entities—plaintiff's employer and the general contractor—had been or were in the process of being added as parties to the action, and disclosure was needed from those entities to ascertain the condition of the floor prior to its collapse and the cause of the collapse. The owner also argued that a triable issue of fact existed "as to whether the building was in a state of disrepair and decay such that the conditions created a foreseeable [elevation-related] risk" requiring the owner to provide the plaintiff with proper safety devices.

In August 2006 plaintiff filed a supplemental summons and complaint against the general contractor asserting the same

causes of action he asserted against the owner. On September 11, 2006, plaintiff served the general contractor through the Secretary of State pursuant to Business Corporation Law § 306 and on October 20 mailed to the general contractor a notice advising that service of process in the action had been effected on the general contractor under that statute.

On the same day he mailed the notice (and while his motion for summary judgment against the owner was sub judice), plaintiff moved for a default judgment against the general contractor, arguing that the general contractor had failed timely to answer the action. On or about November 3, the general contractor cross-moved for leave to serve a late answer. The general contractor acknowledged that it failed timely to answer the action, but asserted that its brief delay in answering was caused "by the intervening time required for the Secretary of State's copy to be served upon the defendants, for that copy to be forwarded to [the general contractor's] insurance carrier and for counsel to be appointed." The general contractor noted that its insurer retained the law firm representing the owner to represent the general contractor on October 31. Plaintiff opposed the cross motion on the ground that the general contractor failed to offer both a reasonable excuse for its failure timely to answer and a meritorious defense to the action.

Supreme Court denied plaintiff's motion for summary judgment against the owner on the issue of liability on the Labor Law § 240 (1) cause of action, without prejudice to a renewed motion following the completion of certain disclosure, i.e., the depositions of the general contractor, plaintiff's employer and the architect of the project. The court reasoned that the mere collapse of a permanent floor, without more, did not constitute an elevation-related risk; to be actionable, such a risk must "be apparent, or known or with reasonable effort could have been known to those who are held to be statutorily liable" (14 Misc 3d 705, 709 [2006]). The court concluded that plaintiff's averment that "[p]ortions of the second floor were old, rotted and decayed" was insufficient to establish his entitlement to summary judgment because he was not "qualified as an expert" and had offered no other evidence indicating that the floor might collapse (id.). In a separate order Supreme Court denied plaintiff's motion for a default judgment against the general contractor and granted the general contractor's cross motion to serve a late answer. Plaintiff appealed both orders.

With respect to his motion against the owner, plaintiff asserts that he is entitled to summary judgment on his Labor Law § 240

(1) cause of action because the floor collapsed, exposing him to an elevation-related risk, and the owner failed to provide him with proper safety devices. While plaintiff maintains that the issue of whether the collapse of the floor was foreseeable is irrelevant in determining liability under the statute, he contends that, in any event, the collapse of the floor was foreseeable because it was old, rotted and decayed.

To establish a cause of action under section 240 (1),[1] a plaintiff must prove both that the statute was violated and that the violation was a proximate cause of his or her injuries (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003]). The statute is violated when the plaintiff is exposed to an elevation-related risk while engaged in an activity covered by the statute and the defendant fails to provide a safety device adequate to protect the plaintiff against the elevation-related risk entailed in the activity or provides an inadequate one (*see Broggy v Rockefeller Group, Inc.*, 8 NY3d 675, 681 [2007]; *see also Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]; *Felker v Corning Inc.*, 90 NY2d 219, 224 [1997]; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 524 [1985]; *see generally Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). Here, plaintiff established that he was engaged in a protected activity at the time of his accident, i.e., demolition work, and that the owner failed to provided him with adequate safety devices; the owner does not argue to the contrary. Thus, the sole issue on the appeal from the order denying plaintiff's motion for summary judgment against the owner on the section 240 (1) cause of action is whether, as a matter of law, plaintiff was exposed to an elevation-related risk when he walked across the permanent floor that collapsed.

In *Rocovich v Consolidated Edison Co.* (*supra*), the Court of Appeals for the first time "fully addressed" the question of "the nature of those occupational hazards which the Legislature intended should warrant the absolute protection that [section

---

1. Labor Law § 240 (1) states that:
   "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

240 (1)] affords" (78 NY2d at 513 [emphasis omitted]). Noting that section 240 (1) does not specify the hazards it was designed to protect against, the Court looked to the "protective means," i.e., the safety devices, listed (*id.*), and found a common thread connecting these devices:

> "[Each of] [t]he various tasks in which these devices are customarily needed or employed . . . entail[s] a significant risk inherent in the particular task because of the relative elevation at which the task must be performed or at which materials or loads must be positioned or secured. The contemplated hazards are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (*id.* at 514).

The Court concluded that the worker in *Rocovich*, who slipped and fell backward, which in turn caused him to step into a 12-inch-deep recessed trough containing caustic hot oil, was not subjected to an elevation-related risk (*id.* at 514-515).

The Court of Appeals reexamined *Rocovich* in *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494 [1993]). The plaintiff in *Ross* was assigned to weld a seam near the top of a shaft that was 40 to 50 feet deep. In order to perform the task, plaintiff was required to sit on a temporary platform above the shaft. To complete the task without falling from the platform, the plaintiff was forced to sit in a contorted position, which caused him to sustain back injuries. The Court rejected the plaintiff's contention that his task posed an elevation-related risk covered by Labor Law § 240 (1) because he needed to sit in the contorted position to avoid falling from the platform and down the shaft. Clarifying the special hazards to which section 240 (1) is addressed, the Court stated that the gravity-related hazards referred to in *Rocovich*

> "do not encompass any and all perils that may be connected in some tangential way with the effects of gravity. Rather, the 'special hazards' referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured. In other words, Labor Law § 240 (1) was

designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*id.* at 501 [citation and emphasis omitted]).

Since the platform served the core objective of section 240 (1)—it prevented the worker from falling down the shaft—the worker's injury was not caused by an elevation-related risk (*id.*; *cf. Gordon v Eastern Ry. Supply*, 82 NY2d 555, 561-562 [1993] [section 240 (1) liability imposed on the owners where the ladder the worker was using did not serve the core objective of the statute since the ladder did not prevent him from falling]).

Several years after it decided *Ross*, the Court again examined the elevation-related risk component of a section 240 (1) cause of action in *Nieves v Five Boro A.C. & Refrig. Corp.* (93 NY2d 914 [1999]). Focusing on the "falling worker" class of hazards, the Court denied recovery under the statute to a worker who tripped while stepping down from the ladder he was standing on to install a sprinkler system. The worker tripped on a portable light concealed by a drop cloth underneath the ladder. Highlighting that the extraordinary protections of section 240 (1) cover only "a narrow class of special hazards," the Court stated that

"[t]he core objective of the statute in requiring protective devices for those working at heights is to allow them to complete their work safely and prevent them from falling. Where an injury results from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first instance, no section 240 (1) liability exists" (*id.* at 916).

Since the ladder the worker used prevented him from falling while performing the installation, the "core objective" of the statute was satisfied; the accident resulted not from an elevation-related risk but from the presence of a concealed object on the floor below the ladder, a "usual and ordinary danger[ ] at a construction site" (*id.*; *see Bond v York Hunter Constr.*, 95 NY2d 883 [2000] [risk of falling while alighting from a construction vehicle was not an elevation-related risk]; *Melber v 6333 Main St.*, 91 NY2d 759 [1998] [worker who tripped over conduit while walking in stilts he wore to perform work at a height was

not exposed to an elevation-related risk; the stilts performed the core objective of the statute since they allowed him safely to perform his task, and the accident occurred as a result of a hazard unrelated to the hazard that brought about the need for the stilts]; *Misseritti v Mark IV Constr. Co.*, 86 NY2d 487 [1995] [collapse of a completed fire wall onto worker is the type of peril usually encountered by a construction worker and not an elevation-related risk covered by section 240 (1)]).

The Court of Appeals revisited the issue of elevation-related risks in *Toefer v Long Is. R.R.* (4 NY3d 399 [2005]), which concerned two separate actions involving workers who fell from the surfaces of flatbed trucks. In one of the actions (*Toefer*), the worker fell approximately four feet from the surface of a truck to the ground while unloading beams from the truck. The Court determined that the worker had not been exposed to an elevation-related risk because he "was working on a large and stable surface only four feet from the ground[;] [t]hat is not a situation that calls for the use of a device like those listed in section 240 (1) to prevent a worker from falling" (*id.* at 408). Similarly, the Court concluded that the worker in the other action (*Marvin v Korean Air Inc.*) had not been exposed to an elevation-related hazard. That worker climbed up onto the trailer of a truck, which was four to five feet off the ground, and cut straps that secured materials to the trailer. While completing the task without incident, the worker fell when he tried to step off the truck because one of his feet became tangled in his safety harness. The Court stated that

> "[s]afety devices of the kind listed in the statute are normally associated with more dangerous activity than a worker's getting down from the back of a truck . . . [T]he [four-to-five-foot] distance . . . [the worker] had to travel, considering the nature of the platform he was departing from[, i.e., a flat trailer], was not enough to make [the statute] applicable" (*id.* at 408-409).

The Court of Appeals recently reviewed elevation-related risks in *Broggy v Rockefeller Group (supra)*. The worker in *Broggy* was part of a crew assigned to wash both exterior and interior window panes in a building. While washing the interior pane of one of the windows, the worker fell from the surface of a desk he was standing on to perform the task. He fell approximately four feet to the floor below, sustaining personal injuries. The Court concluded that the worker was not exposed to an

elevation-related risk because he was not "obliged to work at an elevation to wash the interior of the windows" (8 NY3d at 681). Although the worker testified at his deposition that he had to stand on the desk to clean the window, that testimony indicated nothing more than that the desk may have been in his way or that he could perform his task more quickly by climbing on the desk instead of seeking assistance to move it (*id.*). After all, prior to the accident, the worker had cleaned without incident eight other interior window panes that were exactly the same height as the window he was cleaning when his accident occurred and did so without the use of a ladder or other safety device (*id.* at 682). Finding that, as a matter of law, the worker "did not . . . need protection from the effects of gravity" (*id.* at 681-682), the Court affirmed an order of the Appellate Division awarding summary judgment to the landlords, lessors, lessees and managers of the building dismissing the worker's Labor Law § 240 (1) cause of action.

At bottom, the Court of Appeals case law demonstrates that no bright-line test exists for determining whether a worker was exposed to an elevation-related risk. Nevertheless, under that case law, a plaintiff in a section 240 (1) action who was injured because he or she fell must establish that (1) the task required the plaintiff to work at an elevation, (2) the plaintiff was exposed to the effects of gravity at that elevation and fell as a direct result of the force of gravity, and (3) the protective devices envisioned by the statute, e.g., ladders, scaffolds and similar devices, were designed to prevent the hazard that caused the fall. Plaintiff has made each of these showings. First, plaintiff was required to perform his task on a permanent floor below which there was another floor. Thus, plaintiff was working at an elevation since he was in a higher position relative to the floor below. Second, plaintiff was exposed to the effects of gravity since the floor collapsed while he was walking across it, causing him to fall, and the fall was the direct result of the effects of gravity. Third, the protective devices envisioned by the statute were designed to prevent a worker from falling through a collapsing floor; plaintiff asserts that harnesses and safety lines attached to a safe structure such as a permanent wall are designed to prevent a fall like the one he experienced, a point that the owner does not contest.[2] The critical inquiries, therefore, are whether plaintiff can recover under section 240

---

2. While most (if not all) of the interior walls of the building were removed in the course of the project, the exterior walls were not.

(1) for an injury caused by the collapse of a permanent floor, and, if so, whether, in addition to the above showings, plaintiff must establish that the collapse of the floor was foreseeable.

While the Court of Appeals has not had occasion to review whether the collapse of a permanent floor or similar structure entails an elevation-related risk, numerous Appellate Division decisions have tackled that issue.[3] The Second Department has concluded that the collapse of a permanent floor can, under certain circumstances, pose an elevation-related risk and give rise to liability under section 240 (1). In *Richardson v Matarese* (206 AD2d 353 [1994]), the workers were injured while attempting to move an 800-pound radiator across the third floor of a building they were helping to renovate when the floor collapsed, causing the workers to fall to the floor below. The Court determined that the collapse of a permanent floor constituted a prima facie violation of section 240 (1), expressly rejecting the contractor's arguments that the statute "is not implicated because the [workers] were injured as the result of the collapse of a permanent, rather than a temporary structure, or as the result of the collapse of the work site itself, rather than a safety device enumerated in [the statute]" (*id.* at 353-354; *see also De Jara v 44-14 Newtown Rd. Apt. Corp.*, 307 AD2d 948, 950 [2003] ["The fact that the fire escape (that collapsed, causing the worker to fall,) was a permanent rather than temporary structure does not preclude Labor Law § 240 (1) liability"]).

In *Shipkoski v Watch Case Factory Assoc.* (292 AD2d 587 [2002]), the Second Department elaborated on its holding in *Richardson*. The worker in *Shipkoski* was injured when the permanent floor he was walking on collapsed, causing him to fall to the floor below. There was evidence in the record on the worker's motion for summary judgment on his section 240 (1) cause of action that, prior to the accident, the floor that collapsed was in a deteriorated condition. The Court stated that

> "[t]here must be a foreseeable risk of injury from
> an elevation-related hazard to impose liability under
> the statute, as '[d]efendants are liable for all normal
> and foreseeable consequences of their acts' (*Gordon*

---

3. It is well established that a fall precipitated by the collapse of a temporary floor or similar structure gives rise to liability under section 240 (1) (*see Gomez v 2355 Eighth Ave., LLC*, 45 AD3d 493 [2007]; *Grigoropoulos v Moshopoulos*, 44 AD3d 1003 [2007]; *Craft v Clark Trading Corp.*, 257 AD2d 886 [1999]; *Robertti v Powers Chang*, 227 AD2d 542 [1996], *lv dismissed* 88 NY2d 1064 [1996]).

*v Eastern Ry. Supply,* 82 NY2d [at] 562). Thus, to establish a prima facie case pursuant to Labor Law § 240 (1), a plaintiff must demonstrate that the risk of injury from an elevation-related hazard was foreseeable, and that an absent or defective protective device of the type enumerated in the statute was a proximate cause of the injuries alleged (*see Felker[, supra]; Misseritti[, supra]*)" (292 AD2d at 588).

Applying these principles, the Court concluded that a triable issue of fact existed regarding "whether the building was in such an advanced state of disrepair and decay from neglect, vandalism, and the elements that the plaintiff's work on the third floor exposed him to a foreseeable risk of injury from an elevation-related hazard" (*id.* at 589; *see Cavanagh v Mega Contr., Inc.,* 34 AD3d 411 [2d Dept 2006]; *cf. Balladares v Southgate Owners Corp.,* 40 AD3d 667, 669-670 [2d Dept 2007] ["Although injury resulting from the collapse of a floor may give rise to liability under Labor Law § 240 (1) where the circumstances are such that there is a foreseeable need for safety devices, the plaintiff failed . . . to raise a triable issue of fact in this regard" (citations omitted)]).

The Second Department has also imposed liability on owners and contractors under section 240 (1) when a worker has fallen through a roof that collapsed, especially when there was evidence that the roof's collapse was foreseeable (*see Taylor v V.A.W. of Am.,* 276 AD2d 621 [2000]; *Charles v Eisenberg,* 250 AD2d 801 [1998]; *see also Dyrmyshi v Clifton Place Dev. Group, Inc.,* 7 AD3d 565 [2004]). That Court, however, has also concluded that a worker who fell when the balcony on which he was standing collapsed could not recover under the statute because "the balcony [wa]s not a scaffold, but rather a permanent appurtenance to the building" (*Caruana v Lexington Vil. Condominiums at Bay Shore,* 23 AD3d 509, 510 [2005]). Using the same rationale, the Court affirmed an order dismissing the section 240 (1) cause of action of a worker who was injured when the permanent staircase on which he was walking collapsed (*Norton v Park Plaza Owners Corp.,* 263 AD2d 531, 531-532 [1999]). In neither *Caruana* nor *Norton* did the Court distinguish or cite its precedents allowing recovery under the statute in seemingly analogous situations.

The Third Department generally applies a rule that is at odds with the prevailing rule in the Second Department that the collapse of a permanent floor or similar structure can give rise to liability under section 240 (1). The Third Department has often

stated that a structure that serves "as a permanent passageway between two parts of [a] building[ ] [is] not . . . a . . . device that is employed for the express purpose of gaining access to an elevated worksite," and therefore no cause of action lies under section 240 (1) where a permanent structure collapses (*Milanese v Kellerman*, 41 AD3d 1058, 1061 [2007] [internal quotation marks omitted] [permanent staircase]; *see also D'Egidio v Frontier Ins. Co.*, 270 AD2d 763, 765-766 [2000], *lv denied* 95 NY2d 765 [2000] [permanent floor]; *Avelino v 26 Railroad Ave.*, 252 AD2d 912, 912-913 [1998] [permanent floor]; *Williams v City of Albany*, 245 AD2d 916, 916-917 [1997] [permanent stairway]; *cf. Craft v Clark Trading Corp.*, 257 AD2d at 887-888 [liability imposed under section 240 (1) where the worker fell when the temporary floor on which he was standing collapsed]; *but see Beard v State of New York*, 25 AD3d 989, 991 [2006] [section 240 (1) liability imposed where the worker fell when the bridge he was demolishing collapsed; the Court, citing *Richardson*, rejected the defendant's contention that the worker could not recover under the statute because the bridge was a permanent structure, especially since the bridge was "not structurally sound"]; *Seguin v Massena Aluminum Recovery Co.*, 229 AD2d 839, 840 [1996] [section 240 (1) liability imposed where the worker fell through a decayed roof to the floor below; the Court, citing *Richardson*, rejected the defendant's contention that the statute was not implicated because the worker fell as a result of the collapse of a permanent structure]).

For its part, the Fourth Department also has issued decisions on the issue of whether the collapse of a permanent structure may give rise to liability under section 240 (1) that cannot easily be reconciled. In *Bradford v State of New York* (17 AD3d 995 [2005]), the Court found that the claimants, one of whom was killed and others who were injured, were exposed to an elevation-related risk when the pedestrian bridge they were helping to erect collapsed. The Court held that the collapse of a work site constitutes a prima facie violation of the statute (*id.* at 997). In dicta, the Court expressly rejected the owner's contention that it had no liability under section 240 (1) because the claimants "were injured as a result of the collapse of a permanent, rather than a temporary structure" (*id.* [internal quotation marks omitted]). In support of that proposition, the Court cited, among other things, *Collins v County of Monroe Indus. Dev. Agency (COMIDA)* (167 AD2d 914 [1990], *lv dismissed* 77 NY2d 874 [1991]), in which the concrete floor of the

underground parking garage on which the worker was standing collapsed, causing the worker to fall to the floor below.[4] On the other hand, the Fourth Department also has followed the Third Department's rule that the collapse of a permanent structure cannot serve as a basis for a section 240 (1) cause of action (*see Sponholz v Benderson Prop. Dev.*, 266 AD2d 815 [1999], *appeal dismissed* 94 NY2d 899 [2000]; *Dombrowski v Schwartz*, 217 AD2d 914 [1995]).

Our precedents regarding whether the collapse of a permanent structure may give rise to liability under section 240 (1) are similarly inconsistent. While addressing the different hazard of a fall through a hole in a permanent floor (rather than the collapse of it), we have indicated that the permanency of a structure is irrelevant in determining whether a cause of action lies under the statute. Thus, in *John v Baharestani* (281 AD2d 114, 119 [2001]), in an opinion by Justice Sullivan, we rejected the owner and contractor's contention that the worker, who fell through an unguarded opening in the floor on which he was walking, was not entitled to the protections of section 240 (1) if, at the time of his accident, the worker was walking on permanent flooring. In so concluding, Justice Sullivan relied on the Second Department's decision in *Richardson* (*supra*) and our prior decision in *Carpio v Tishman Constr. Corp. of N.Y.* (240 AD2d 234 [1997]). Finding that a worker who partially fell through a hole in the permanent floor on which he was walking was entitled to summary judgment on his cause of action under section 240 (1), the majority in *Carpio* stated that

> "[the statute] does not apply merely because work is performed at elevated heights, but rather, applies only where the work itself involves risks related to differences in elevation. However, [the dissent] misapplies this principle in concluding that no elevation-related risk existed because the plaintiff was working on a 'permanent concrete floor,' and that this accident was no different from a situation where the plaintiff tripped on a pothole on the ground floor. Indeed, it is the risk posed by elevation differentials at a construction site, not the permanency of the structure, which is determinative of the statute's applicability" (*id.* at 235-236 [citation omitted]).

---

4. It is not clear, however, whether the party found liable under Labor Law § 240 (1) argued on appeal that it could not be held liable because the concrete floor was a permanent structure.

Several of our decisions, however, have indicated that the collapse of a permanent structure cannot serve as a basis for a section 240 (1) cause of action (*see Griffin v New York City Tr. Auth.*, 16 AD3d 202 [2005]; *Carrion v Lewmara Realty Corp.*, 222 AD2d 205 [1995], *lv denied* 88 NY2d 896 [1996]; *see also Contrera v Gesher Realty Corp.*, 1 AD3d 111 [2003]).

As this survey of the Appellate Division case law makes plain, the law is unclear on the issue of whether the collapse of a permanent floor or similar structure poses an elevation-related risk giving rise to a cause of action under section 240 (1). The Appellate Division case law supports each of the following propositions: (1) the collapse of a permanent structure constitutes a prima facie violation of section 240 (1) without regard to the foreseeability of the collapse (*see e.g. Bradford, supra*; *Collins, supra*), (2) the collapse of a permanent structure may give rise to liability under section 240 (1) if there is evidence that the collapse was foreseeable (*see e.g. Balladares, supra*; *Shipkoski, supra*), and (3) the collapse of a permanent structure cannot give rise to liability under section 240 (1) regardless of whether the collapse was foreseeable (*see e.g. Milanese, supra*; *Caruana, supra*; *D'Egidio, supra*).

The prevailing rule of the Third Department—the collapse of a permanent structure cannot give rise to section 240 (1) liability—is, in our view, based on an erroneous premise. The premise of that rule is that a permanent structure, such as a floor or a staircase, is not a safety device, but rather a passageway between two parts of a building and therefore the statute is inapplicable (*see e.g. Milanese*, 41 AD3d at 1061; *see also Brennan v RCP Assoc.*, 257 AD2d 389, 391 [1st Dept 1999], *lv dismissed* 93 NY2d 889 [1999]). That inquiry, however, misses the mark because it places the emphasis on whether the structure functioned as a safety device rather than on whether the worker was exposed to an elevation-related risk requiring a safety device. As the Court of Appeals has observed, "[t]he crucial consideration under section 240 (1) is . . . whether a particular . . . task creates an elevation-related risk of the kind that the safety devices listed in section 240 (1) protect against" (*Broggy*, 8 NY3d at 681; *see Carpio*, 240 AD2d at 236 ["it is the risk posed by elevation differentials . . . , not the permanency of the structure, which is determinative of the statute's applicability"]). Moreover, determining liability under the statute on the basis of whether the structure from which a worker fell was permanent "would create an arbitrary dividing line unfaith-

ful to [the] legislative intent" of the statute, i.e., protecting workers who are working at heights from falling (*Broggy*, 8 NY3d at 681). Accordingly, plaintiff can recover under section 240 (1) even though he was injured as a result of the collapse of a permanent floor.

With respect to whether plaintiff must demonstrate that the collapse of the floor was foreseeable, Justice Sullivan discussed the issue of foreseeability as it relates to section 240 (1) in *Buckley v Columbia Grammar & Preparatory* (44 AD3d 263 [2007]). The worker in *Buckley* was assisting in the installation of an elevator. The counterweight frame of the elevator was ascending the shaft when a nail-like spike protruding from the wall of the shaft struck the frame. Several of the counterweights housed in the frame were dislodged and fell down the shaft, striking the worker who was standing in the doorway of the shaft on the basement floor. Rejecting the worker's contention that he was exposed to an elevation-related risk, Justice Sullivan wrote that "a worker who is caused to fall or is injured by the application of an external force is entitled to the protection of the statute *only if the application of that force was foreseeable*" (*id.* at 267 [emphasis added]). "Thus, the determination of the type of protective device[, if any,] required for a particular job turns on the foreseeable risks of harm presented by the nature of the work being performed" (*id.* at 268). Since the dislodging and falling of the counterweights were not foreseeable risks inherent in the worker's task, no obligation arose on the part of the owner or contractor to provide the worker with a protective device contemplated by section 240 (1). We have noted in a number of other decisions the requirement that a plaintiff in a section 240 (1) action demonstrate that the hazard that caused the plaintiff's injuries was foreseeable in light of the task the plaintiff was performing (*see Campbell v City of New York*, 32 AD3d 703 [2006]; *Bush v Goodyear Tire & Rubber Co.*, 9 AD3d 252 [2004], *lv dismissed* 3 NY3d 737 [2004]; *Cruz v Turner Constr. Co.*, 279 AD2d 322 [2001]; *Arce v 1133 Bldg. Corp.*, 257 AD2d 515 [1999]; *Robinson v NAB Constr. Corp.*, 210 AD2d 86 [1994]). In light of our case law and the prevailing case law of the Second Department (*see Balladares, supra*; *Shipkoski, supra*), we conclude that plaintiff must establish that the collapse of the floor was foreseeable.

Our conclusion that liability under section 240 (1) under these circumstances requires a showing that the collapse of the floor was foreseeable does not effectively consign plaintiff to the rem-

edies he would have in any event under general principles of negligence. The issue of foreseeability in this context is relevant only with respect to whether the plaintiff was exposed to an elevation-related risk, and only where the elevation-related risk was not apparent from the nature of the work such that the defendant would not normally be expected to provide the worker with a safety device to prevent the worker from falling. On his cause of action under the statute, plaintiff is relieved from demonstrating a number of elements he would have to prove in a common-law negligence claim, including that defendants breached a duty of care owed to him and that defendants created or had notice of a defective condition. Moreover, owners and general contractors are liable under the statute regardless of whether they supervised or controlled the work being performed when the plaintiff was injured, and principles of comparative fault are irrelevant under the statute.

Here, plaintiff failed to make a prima facie showing that the collapse of the floor was a foreseeable risk of the task he was performing. Plaintiff was walking across the permanent floor, which was not being removed during the project, while dragging a 50- to 60-pound piece of debris. Plaintiff's deposition testimony sheds little light on the condition of the floor prior to its collapse; he only testified that he "was walking on a clean straight floor" in which there were no holes. Moreover, in his affidavit plaintiff merely averred that "[p]ortions of the second floor were old, rotted and decayed." Plaintiff offered no specifics as to which portions of the second floor were in that condition, and his characterization of the condition of the floor, i.e., "old, rotted and decayed," is unsupported by any factual details. Accordingly, plaintiff failed to demonstrate his entitlement to judgment as a matter of law, and Supreme Court correctly denied the motion without prejudice to a renewed motion following disclosure.

With respect to plaintiff's appeal from the order denying his motion for a default judgment against the general contractor and granting the general contractor's cross motion for leave to serve a late answer, plaintiff argues that neither the affirmation of the general contractor's counsel nor the affidavit of the general contractor's president demonstrated a reasonable excuse for its failure timely to serve an answer. Similarly, plaintiff argues that the president's affidavit failed to demonstrate that the general contractor has a meritorious defense to the action.

On August 30, 2006, plaintiff filed a supplemental summons and complaint naming the general contractor as a party to this

action. Plaintiff served the general contractor by delivering two copies of the initiatory papers to the Secretary of State on September 11, 2006 (*see* Business Corporation Law § 306 [b]). Service was complete on that date and the general contractor's answer, to be timely, had to be served by October 11 (*see Shah v Wilco Sys., Inc.*, 27 AD3d 169, 173 [2005], *lv· dismissed in part and denied in part* 7 NY3d 859 [2006]). On October 20, plaintiff mailed to the general contractor a notice, along with a copy of the initiatory papers, advising it that plaintiff had served the general contractor through the Secretary of State on September 11. Plaintiff sent this notice to comply with CPLR 3215 (g) (4), which requires such a notice to be sent 20 days prior to the entry of a default judgment. Also on October 20, plaintiff moved for a default judgment against the general contractor. On or about November 3, the general contractor cross-moved to serve a late answer.

The general contractor failed timely to serve an answer, and it did not seek to serve a late answer until plaintiff sought a default judgment against it. The general contractor's excuse for its nearly three-week delay in seeking leave to serve a late answer is hardly overwhelming; the general contractor asserted that the "delay was occasioned by the intervening time required for the Secretary of State's copy to be served upon [it], for that copy to be forwarded to [the general contractor's] insurance carrier and for counsel to be appointed." Nevertheless, since the delay was brief and plaintiff was not prejudiced by the delay, we find the excuse to be adequate (*see generally Rodriguez v Dixie N.Y.C., Inc.*, 26 AD3d 199 [2006]; *Heskel's W. 38th St. Corp. v Gotham Constr. Co. LLC*, 14 AD3d 306 [2005]). While we agree with plaintiff that the conclusory affidavit of the general contractor's president is insufficient to demonstrate a potential meritorious defense to the action, a showing of a potential meritorious defense is not an essential component of a motion to serve a late answer (CPLR 3012 [d]) where, as here, no default order or judgment has been entered (*see Nason v Fisher*, 309 AD2d 526 [2003]; *DeMarco v Wyndham Intl.*, 299 AD2d 209 [2002]; *Terrones v Morera*, 295 AD2d 254 [2002]). In light of the brevity of the delay, the absence of prejudice to plaintiff and the public policy favoring the resolution of disputes on their merits (*see Hosten v Oladapo*, 52 AD3d 658 [2008]), Supreme Court properly granted the general contractor's cross motion to serve a late answer.

Accordingly, the order of Supreme Court, New York County (Karen S. Smith, J.), entered November 1, 2006, which denied

plaintiff's motion for partial summary judgment, without prejudice to renew after certain disclosure, and the order, same court and Justice, entered December 13, 2006, which denied plaintiff's motion for a default judgment against defendant Artimus Construction and granted Artimus' cross motion for leave to serve a late answer, should be affirmed, without costs.

SAXE, J.P., SWEENY and ACOSTA, JJ., concur.

Orders, Supreme Court, New York County, entered November 1, 2006 and December 13, 2006, affirmed, without costs.