OPINION OF THE COURT
Margaret A. Chan, J.
Plaintiffs, the Patrolmen’s Benevolent Association of the City of New York, Inc. (PBA) and its president, Patrick Lynch, challenge defendants’ interpretation and application of the Child Care Credit Law for certain of its members. On behalf of the PBA and the police officers who have been or may be aggrieved in the future, they move for an order: (i) pursuant to CPLR 3215, for a default judgment against defendants; and (ii) pursuant to CPLR 3212, for summary judgment and declaring that all police officers hired by the New York City Police Department (NYPD), including those hired after July 1, 2009, may avail themselves of the benefits afforded by Administrative Code of the City of New York (Administrative Code § 13-218 [h]). Defendants, the City of New York and the New York City Police Pension Fund (PPF), cross-move for an order: (i) converting this action to a CPLR article 78 proceeding, and dismissing all claims accruing prior to four months from the filing of this action, as time-barred; (ii) compelling plaintiffs to accept service of defendants’ late answer; and (iii) pursuant to CPLR 3212, for summary judgment dismissing the claim.
Background
Plaintiff Patrick Lynch, a New York City Police Officer, is the president of plaintiff PBA, the collective bargaining agent for *435 New York City police officers. Defendant PPF is one of five public employee retirement programs maintained by the City which was created pursuant to subchapter 2 of chapter 2 of title 13 of the Administrative Code (§§ 13-214—13-267.1) (defendants’ exhibit 1, complaint ¶¶ 5-10).
Tiers 1 and 2 and Administrative Code § 13-218 (h)
Police officers, as well as other city employees who joined the City retirement system prior to July 1, 1973, are classified in tier 1 (see generally Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v Regan, 71 NY2d 653 [1988]). Tier 1 members’ benefits are governed by subchapter 2 of chapter 2 of title 13 of the Administrative Code.
Chapter 382 of the Laws of 1973 created article 11 of the Retirement and Social Security Law (Retirement and Social Security Law §§ 440-451), which established tier 2 for public employees who joined the retirement system after July 1, 1973. This tier was created to “deal with the steeply mounting costs of public employee pensions” (Lynch v City of New York, 23 NY3d 757, 762 [2014] [internal quotation marks and citation omitted]). Police officers hired after June 30, 1973, but prior to July 1, 2009, are classified as tier 2 members of the PPF. Pension benefits of tier 2 police officers are governed by article 11 of the Retirement and Social Security Law, and, to the extent that its provisions are not in conflict with article 11, by the Administrative Code. The benefits of tier 1 and tier 2 are basically the same, and will be referred to in this decision, collectively, as tier 2 (see Lynch v City of New York, 23 NY3d at 761).
Section 13-218 of the Administrative Code, entitled “Credit for service,” was amended by chapter 594 of the Laws of 2000 (eff Dec. 8, 2000) to include subdivision (h). This subdivision allows police officers to obtain credit for certain periods of absences without pay for child care leave. Specifically, it provides, as follows:
“h.* Notwithstanding the provisions of subdivision c of this section, any member who is absent without pay for child care le[a]ve of absence pursuant to regulations of the New York city police department shall be eligible for credit for such period of child care leave provided such member files a claim for such service credit with the pension fund by December thirty-first, two thousand one or within ninety days following termination of the child care leave, whichever is later, and contributes to the *436 pension fund an amount which such member would have contributed during the period of such child care leave, together with interest thereon. Service credit provided pursuant to this subdivision shall not exceed one year of credit for each period of authorized child care leave. In the event there is a conflict between the provisions of this subdivision and the provisions of any other law or code to the contrary, the provisions of this subdivision shall govern.
“*There are two subdivisions h.”
This provision, known as the Child Care Credit Law, was passed as part of a series of pension initiatives that, among other things, were aimed at helping working parents (see Assembly Mem in Support, Bill Jacket, L 1999, ch 646 at 9 [statute intended to discourage “parents (from) rush(ing) back to the workplace without properly caring for their children”]). Other pension enhancements were also enacted by the legislature that year (see Lynch v City of New York, 23 NY3d at 764).
Tier 3 under Article 14 of Retirement and Social Security Law
Chapter 890 of the Laws of 1976 created article 14 of the Retirement and Social Security Law, known as tier 3 (Retirement and Social Security Law §§ 500-520), which became effective January 1, 1977 (see Lynch v City of New York, 23 NY3d at 765). “Tier 3 was a comprehensive retirement program designed to provide uniform benefits for all public employees and eliminate the costly special treatment of selected groups . . . inherent in the previous program” {id. [internal quotation marks and brackets omitted], quoting Mem from Robert J. Morgado [Secretary to the Governor] to Judah Gribetz [Governor’s counsel], Bill Jacket, L 1976, ch 890). Despite the creation of tier 3, article 14 temporarily retained police and fire members hired from July 27, 1976 through June 30, 2009, as tier 2 pension members (Retirement and Social Security Law § 500 [c]; see also Lynch v City of New York, 23 NY3d at 765-767). Every two years, from 1981 until 2009, the legislature amended the Retirement and Social Security Law to enact a two-year tier 2 extender for police and fire members, even though tier 2 was closed to virtually all other categories of public employees hired after July 26, 1976 {Lynch v City of New York, 23 NY3d at 766-767).
On June 2, 2009, however, then-Governor Paterson vetoed the bill that would have afforded tier 2 status to police officers *437 hired during the two-year period from July 1, 2009 through June 30, 2011 {id.). The Governor remarked that “these are not routine times” and proposed new tier 5 legislation which was going to “mak[e] certain cost-saving changes for new entrants into the public pension system, while still providing a high level of benefits for public retirees” (23 NY3d at 767 [internal quotation marks and citation omitted]). The Governor indicated that he did not want to keep reenacting the same provisions that were contributing to the City’s financial troubles, without accompanying reform {id.). As a result, police officers hired after June 30, 2009 became tier 3 members having been specifically excluded from tier 4, and their pension rights are governed by article 14 of the Retirement and Social Security Law {id.).
Article 14, section 513, entitled “Credit for service,” contains various subdivisions for part-time service, previous service, and creditable service. It also includes a subdivision (h) which addresses child care leave, but only for correction officers. Specifically, it provides, in relevant part, as follows:
“Notwithstanding any other provision of this section, any general member in the uniformed correction force of the New York city department of correction who is absent without pay for a child care leave of absence pursuant to regulations of the New York city department of correction shall be eligible for credit for such period of child care leave provided such member files a claim for such service credit with the retirement system by December thirty-first, two thousand five or within ninety days of the termination of the child care leave, whichever is later, and contributes to the retirement system an amount which such member would have contributed during the period of such child care leave, together with interest thereon.” (Retirement and Social Security Law § 513 [h].)
It further provides that, if there is a conflict between this provision and the provisions of any other law or code, this subdivision would govern, but that it shall not apply to any New York City uniformed correction/sanitation revised plan member (i.e., a member hired after Mar. 31, 2012 [see Retirement and Social Security Law § 501 (25)]).
Tier 5 was created by the legislature in December 2009, but it did not change the tier 3 status of City police and fire members appointed on or after July 1, 2009 (Lynch v City of *438 New York, 23 NY3d at 767). However, more recent pension reform measures (L 2012, ch 18) created a new tier—tier 3 revised plan members (also known as tier 6)—for police officers hired after March 31, 2012 (Retirement and Social Security Law § 501 [26]; see Lynch v City of New York, 23 NY3d at 767 n 8).
On July 17, 2015, plaintiffs brought this action seeking a declaratory judgment on behalf of all tier 3 police officers who have been, or may in the future be, aggrieved by defendants’ policy not to apply Administrative Code § 13-218 (h), and thereby prohibiting them from availing themselves of the benefits of the child care leave credit. They seek a judgment that defendants’ policy is in violation of law, and a declaration that all NYPD officers may avail themselves of the benefits afforded by that code provision, regardless of their hire date (defendants’ exhibit 1, complaint).
In seeking summary judgment, plaintiffs urge that all NYPD officers are entitled to receive the credit set forth in the Child Care Credit Law (Administrative Code § 13-218 [h]). They make the following arguments:
i. the statutory language states that it would apply to “any member,” and contemplates future applications by officers seeking the child care credit;
ii. the legislative history supports their view because the purpose of the 1999-2000 pension reform bills, collectively, was to improve benefits for public employees, to assist working parents, and to reinstate employees to their original tiers regardless of breaks in service;
iii. Administrative Code § 13-218 (h) has neither been repealed nor amended to apply only to certain classes of officers, and that such a limitation should not be read into the statute;
iv. there is no reasonable explanation why article 14 of the Retirement and Social Security Law should not be read in conjunction with Administrative Code § 13-218 (h), as defendants acknowledge they must do with regard to article 11; and
v. there is no express language in either article 14 or the Administrative Code that supports defendants’ contention, that only tier 2 police officers are able to avail themselves of the child care benefits set forth in Administrative Code § 13-218 (h).
Plaintiffs assert that their claims may be maintained as a declaratory judgment action, because there are no fact-specific issues that must be resolved by the court.
*439 In opposition, defendants counter plaintiffs’ arguments as follows:
i. pursuant to Retirement and Social Security Law § 513 (h), the only members of tier 3 who can obtain service credit for child care leave without pay are correction officers hired before April 1, 2012;
ii. that when tier 6 (also known as tier 3 revised plan members) was created in April 2012, the legislature addressed the omission of tier 3 police officers from Retirement and Social Security Law § 513 (h), not by expanding the child care credit to such police officers, but by eliminating the eligibility of correction officers hired after March 31, 2012 in order to bring the pension credit afforded to correction officers in parity with the lesser benefit afforded to police officers;
iii. that plaintiffs’ claim that the pension rights of tier 3 police officers include the child care service credit provision contained in the Administrative Code is baseless as Retirement and Social Security Law § 500 (a) provides that the provisions of article 14 shall govern tier 3 members in the case of a conflict with the provisions of any other law or code;
iv. that Retirement and Social Security Law § 501 contains the definitions for “credited service” (§ 501 [3]) and “creditable service” (§ 501 [4]), both of which refer to § 513 for determining what service qualifies to be counted as credited service;
v. that the service credit available to tier 3 police officers is governed entirely and exclusively by Retirement and Social Security Law § 513, and not by any Administrative Code provision; and
vi. that because Retirement and Social Security Law § 513 (h) limits child care service credit to correction officers who were appointed prior to April 1, 2012, tier 3 police officers cannot seek such credit under the conflicting provision of Administrative Code § 13-218 (h).
Discussion
The branch of plaintiffs’ motion for a default judgment is denied. Plaintiffs’ motion for summary judgment is granted; defendants’ cross motion for summary judgment is denied; and it is declared that all police officers, including those hired after July 1, 2009 in tier 3, may avail themselves of the benefit of the child care service credit provided by Administrative Code § 13-218 (h). The branch of defendants’ cross motion to convert this action into an article 78 proceeding is granted.
*440 Motion for Default Judgment
Plaintiffs contend that they are entitled to a default judgment against defendants because defendants served and filed their answer three days after the agreed upon extended deadline, without sufficient excuse, and without moving to compel plaintiffs to accept their answer, which demonstrates willfulness. In the exercise of this court’s discretion, a default judgment is denied. Defendants’ counsel provided a reasonable excuse for its short delay of three days in filing and serving its answer, which was caused by defendants’ counsel’s failure to consider a religious holidays impact on her supervisor’s ability to review a draft of the answer. Also, plaintiffs have failed to show any prejudice from this brief delay (see Gantt v North Shore-LIJ Health Sys., 140 AD3d 418, 418-419 [1st Dept 2016]; Cirillo v Macy’s, Inc., 61 AD3d 538, 540 [1st Dept 2009]).
While defendants’ excuse is not particularly compelling, especially in light of the fact that they had already obtained several extensions of their time to answer, law office failure may constitute “good cause” for a delay (see Yea Soon Chung v Mid Queens LP, 139 AD3d 490, 490 [1st Dept 2016]; Lamar v City of New York, 68 AD3d 449, 449 [1st Dept 2009]), and there is no evidence of willfulness (see Marine v Montefiore Health Sys., Inc., 129 AD3d 428, 429 [1st Dept 2015]). Moreover, there is a strong public policy in favor of resolving controversies on their merits (see Oberon Sec. LLC v Parmar, 135 AD3d 446, 446-447 [1st Dept 2016]; Myers v City of New York, 110 AD3d 652, 652 [1st Dept 2013]).
Defendants are not required to file an affidavit of merit on their cross motion, where, as here, no default order or judgment has been entered (Cirillo v Macy’s, Inc., 61 AD3d at 540; see also Lamar v City of New York, 68 AD3d at 449; Jones v 414 Equities LLC, 57 AD3d 65, 81 [1st Dept 2008]). Therefore, plaintiffs’ motion for a default judgment is denied; defendants’ cross motion to compel plaintiffs to accept service of their late answer is granted; and service is deemed effective on September 23, 2015, with issue being joined on that date (see CPLR 3012 [d]; Myers v City of New York, 110 AD3d at 652).
Conversion to Article 78 Proceeding
Plaintiffs’ challenge to the validity of defendants’ interpretation and implementation of the Retirement and Social Security Law and Administrative Code § 13-218 (h), pursuant to which defendants denied child care service credit to tier 3 police officers, is converted to an article 78 proceeding.
*441 “[W]here a quasi-legislative act by an administrative agency ... is challenged on the ground that it ‘was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion’ (CPLR 7803 [3]), a proceeding in the form prescribed by article 78 can be maintained,” and the four-month statute of limitations for special proceedings governs (New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 204 [1994]).
While an agency’s generally applicable decisions “do not lend themselves to consideration on their merits” under article 78’s mandamus to review, because they involve “rational choices among competing policy considerations,” in some cases, “even a nonindividualized, generally applicable quasi-legislative act such as a regulation or an across-the-board rate-computation ruling can be challenged” as lacking a rational basis, affected by an error of law, or arbitrary and capricious (id. at 204-205; see also Lynch v City of New York, 23 NY3d 757 [2014] [declaratory judgment claim, challenging whether City violated Retirement and Social Security Law § 480 (b) (i) for failing to contribute required amounts to pensions of tier 3 police and fire members, converted to article 78]; Matter of Kaslow v City of New York, 23 NY3d 78 [2014] [article 78 proceeding appropriate to determine meaning of “Credited Service” under Retirement and Social Security Law for tier 3 CO-20 retirement plan for correction officer]). Plaintiffs’ claim here presents such an instance.
Plaintiffs assert that defendants’ interpretation of the Child Care Credit Law “is effected by an error of law” (plaintiffs’ mem at 1). They urge that the PPF’s application of the various statutory and Administrative Code provisions, including articles 11 and 14 of the Retirement and Social Security Law, and Administrative Code § 13-218 (h), has no foundation in, and represents an irrational construction of, the governing statutes. This claim is clearly encompassed within CPLR 7803 (3) as grounds for mandamus to review, which includes challenges as to “whether a determination . . . was affected by an error of law or was arbitrary and capricious” (see also New York City Health & Hosps. Corp. v McBarnette, 84 NY2d at 205). Accordingly, this matter is converted to an article 78 proceeding, pursuant to CPLR 103 (c). As defendants correctly contend, this subjects plaintiffs’ claim to the four-month statute of limitations contained in CPLR 217. In matters seeking mandamus *442 the statute of limitations begins to run upon the refusal to perform such a duty (see Donoghue v New York City Dept. of Educ., 80 AD3d 535, 536 [1st Dept 2011]; Matter of Kolson v New York City Health & Hosps. Corp., 53 AD2d 827, 827 [1st Dept 1976]). In this instance, the accrual date would be calculated from the date an NYPD pensioner was denied the credit set forth in Child Care Credit Law.
Summary Judgment
The plaintiffs’ motion for summary judgment is granted, and defendants’ cross motion for summary judgment is denied. And this court declares that police officers, including those hired after July 1, 2009 in tier 3, may avail themselves of the benefit of the child care service credit contained in Administrative Code § 13-218 (h).
In interpreting a statute, this court’s primary consideration “is to ascertain and give effect to the intention of the Legislature” (Riley v County of Broome, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]). While the text of the statute “is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning” (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]), the legislative history may also be relevant (see Riley v County of Broome, 95 NY2d at 463). The court notes that, where the issue presented to the court is one purely of statutory interpretation, “there is little basis to rely on any special competence or expertise of the administrative agency,” and the court “need not accord any deference to the agency’s determination” (Matter of Albano v Board of Trustees of N.Y. City Fire Dept., Art. II Pension Fund, 98 NY2d 548, 553 [2002] [internal quotation marks and citation omitted]; see also International Union of Painters & Allied Trades, Dist. Council No. 4 v New York State Dept. of Labor, 147 AD3d 1542, 1542-1543 [4th Dept 2017] [Labor Department’s interpretation is contrary to plain meaning of statute language, so no deference is required]).
The clear language of Administrative Code § 13-218 (h) provides that “any member” of the NYPD, “who is absent without pay for child care le[a]ve of absence” pursuant to department regulations “shall be eligible for credit for such period of child care leave,” provided the member files a claim for the credit with PPF “by December thirty-first, two thousand one or within ninety days following termination of the child care leave, whichever is later,” and contributes to the pension *443 fund the amounts the member would have contributed during the child care period, with interest. It also provides that, if “there is a conflict between the provisions of this subdivision and the provisions of any other law or code to the contrary, the provisions of this subdivision shall govern” (Administrative Code § 13-218 [h]). This plainly and unambiguously states that it applies to “any member,” and, contrary to defendants’ interpretation, does not limit its application to tier 2 police officers only. In addition, the statute contemplates future applications by police officers seeking child care leave credit, by including language that they must submit their applications “within ninety days following [the] termination of the child care leave, whichever is later” (id. [emphasis added]). Administrative Code § 13-218 (h) has not been repealed or amended to apply only to certain tiers of police officers.
This code provision (L 2000, ch 594), also known as the Child Care Credit Law, was enacted as part of a series of pension reform measures in 1999 and 2000. In the Memorandum in Support by the New York State Assembly, the legislature clearly stated the purpose of the bill: “[t]his bill will allow members of the police pension fund to obtain retirement credit for absences due to child care leave” (Assembly Mem in Support, Bill Jacket, L 2000, ch 594). It stated, as justification for the provision, that “[d]ue to the nature of modern police work, many police officers are forced to take leaves of absence after the birth of a child or an adoption” and that this would provide “these officers with [a] mechanism to restore [their] retirement benefits by making contributions to offset a portion of the costs” (id.). The stated purpose of the various pension initiatives in the 1999-2000 pension reform bills was to “improve benefits” for public employees (Budget Rep on Bill Jacket, L 1999, ch 646 at 10 [tier reinstatement regardless of breaks in service]; plaintiffs’ exhibit H), “grant public employees more credit for all their years in public service,” and address inequities in the retirement systems (Governor’s Off of Empl Relations Mem, Bill Jacket, L 2000, ch 552 at 9, 14-15; plaintiffs’ exhibit I). The reforms also were aimed at assisting working parents (Assembly Mem in Support, Bill Jacket, L 1999, ch 646 at 9 [discourage “parents (from) rush(ing) back to the workplace without properly caring for their children”]; Assembly Mem in Support, Bill Jacket, L 2000, ch 594; plaintiffs’ exhibit H). This legislative history supports the plain statutory text, that the legislature intended the child care benefit to apply to all *444 members of the PPF. There is nothing in the legislative history that reflects a common understanding that this child care leave benefit was only to be available to tiers 1 and 2 (cf. Lynch v City of New York, 23 NY3d at 774).
Defendants’ contention, that tier 3 police officers are governed exclusively by article 14 of the Retirement and Social Security Law, and that Retirement and Social Security Law § 513 provides the exclusive provision for service credit, is unavailing. First, it is noted that both articles 11 and 14, and the general laws setting forth the benefits for tiers 2 and 3, respectively, were enacted years before Administrative Code § 13-218 (h), which also states that “[i]n the event there is a conflict between the provisions of this subdivision and the provisions of any other law or code to the contrary, the provisions of this subdivision shall govern.” More importantly, Administrative Code § 13-218 (h) does not conflict with articles 11 and 14.
Further, defendants fail to explain why article 14 should not be read in conjunction with Administrative Code § 13-218 (h), when article 11 is read in conjunction therewith, and affords the benefits thereof to tier 2 police officers. Article 14, section 500 (a) provides, in relevant part:
“Notwithstanding any other provision of law . . . the provisions of this article [14] shall apply to all members who join or rejoin a public retirement system of the state on or after July first, nineteen hundred seventy-six ... In the event that there is a conflict between the provisions of this article and the provisions of any other law or code, the provisions of this article shall govern.”
Article 11, section 440 (a) contains an analogous provision, with the identical last sentence. If, as defendants urge, Retirement and Social Security Law § 500 (a) bars the application of Administrative Code § 13-218 (h) to tier 3 police officers, then, similarly, Retirement and Social Security Law § 440 (a) would bar it as to tier 2 police officers, which defendants admit is not the case.
Defendants also fail to explain what conflict exists between Administrative Code § 13-218 (h) and article 14. The Administrative Code provision gives police officers the ability to buy back pension credit for unpaid child care leaves, while article 14, section 513 (h) provides correction officers with a similar child care leave benefit. Specifically, that provision states, in relevant part, that “any general member in the uniformed cor *445 rection force” who takes a child care leave of absence without pay according to department regulations, files a claim and contributes to the retirement system the appropriate amount they would have contributed, may receive credit for up to one year (Retirement and Social Security Law § 513 [h]). In 2012, the legislature amended the provision to limit the Correction Department members who could use it by providing that “the provisions of this subdivision shall not apply to a member of the uniformed force of the New York city department of correction who is a New York city uniformed correction/sanitation revised plan member” (Retirement and Social Security Law § 513 [h]). This amendment was passed when the legislature created tier 3 revised plans (also known as tier 6).
The statute’s legislative history, when it was originally enacted in 2005, supports plaintiffs’ arguments that this section 513 (h) was not intended to repeal Administrative Code § 13-218 (h), nor is it in conflict with that code provision. Thus, the New York State Senate’s Introducer’s Memorandum in Support stated that the purpose of the statute was to “[a]llow[ ] correction members of the New York City Employees’ Retirement System to obtain retirement credit for absences due to child care leave” (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 477 at 3). It stated that tiers 1 and 2 correction members already received this benefit (L 2004, ch 581; Administrative Code § 13-107 [k]), and that the benefit was intended to be offered to all correction members, but was mistakenly omitted from the original bill, and this 2005 statute was to correct that oversight (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 477 at 3). It further stated that “[i]n 2001 [sic], similar legislation was signed into law to allow members of the police pension fund to obtain retirement credit for periods of leave for child care. This bill expands that concept to allow correction officers the same privilege.” (Id.)
It went on to state that “[l]ike police officers, many correction officers are forced to take a leave of absence after the birth of a child or an adoption,” and this would provide correction officers with the same mechanism that the police officers have to restore their benefits (id.). In the Budget Report on Bills (Budget Rep on Bills, Bill Jacket, L 2005, ch 477 at 5), the Division of Budget stated that “Chapter 594 of the laws of 2000 granted an identical benefit to NYC police officers,” this bill was to fix an inadvertent mistake in chapter 581 of the Laws of 2004, and that it and the City had no objection.
*446 The City’s citation to the Governor’s Program Bill 2011 does not warrant a different conclusion. That memorandum addressed proposed pension reforms, which sought to create a new tier for members of all the various state, local and city employees who first became members of the pensions funds on or after July 1, 2011. Those pension reforms ended up creating a new tier for employees who first became members on or after April 1, 2012, tier 6, or sometimes referred to as tier 3 revised plan members. The reforms led to the 2012 amendment to Retirement and Social Security Law § 513 (h) which limited the correction officers’ child care leave benefit to tier 3 correction members, and excluded tier 3 revised plan correction officer members. The amendment did not address police officers’ child care leave benefits.
Defendants’ reliance on Matter of Kaslow v City of New York (23 NY3d 78 [2014]) is misplaced. That case involved a retired correction officer’s claim for credit for nonuniformed as well as uniformed service under Administrative Code § 13-155 (a) (3) (c), a tier 2 benefit calculation formula, but then elected to apply Retirement and Social Security Law § 504-a (c) (2), as a tier 3 CO-20 plan member, to compute the amount owed to him for additional correction service beyond 20 years, which only looked at uniformed service. The Kaslow Court held that the petitioner’s pick-and-choose approach to the provisions “would maximize his pension but does not create a harmonious whole” {id. at 88). Instead, the Court found that the New York City Employees’ Retirement System’s explanation of how the Retirement and Social Security Law provision at issue “applie[d] and fit[ ] into the overall statutory design is coherent and reasonable” {id.). It found a direct conflict between the provisions calculating both uniformed and nonuniformed service for the correction officer’s pension.
In contrast, there is no such direct conflict here. The defendants fail to explain why recognizing the tier 3 police officers’ right to buy back pension credit for a child care leave under Administrative Code § 13-218 (h), and the tier 3 uniformed correction officers’ right to that same buyback benefit, fails to create a harmonious whole. Unlike the petitioner in Kaslow, plaintiffs are not picking and choosing provisions to give them the most advantageous pension. Rather, their interpretation shows that Retirement and Social Security Law § 513 (h) was meant to give correction officers some of the same child care credit benefit police officers already enjoy.
*447 Accordingly, it is ordered that the branch of plaintiffs’ motion for a default judgment is denied, and the branch of defendants’ cross motion, to compel plaintiffs to accept service of their late answer, is granted, with service and filing of the answer deemed complete on September 23, 2015; and it is further ordered that the branch of defendants’ cross motion to convert this declaratory judgment action into an article 78 proceeding, and then to dismiss the proceeding as time-barred, is granted only to the extent of converting the action to an article 78 proceeding which is subject to the four-month statute of limitations contained in CPLR 217; and it is further ordered that the branch of plaintiffs’ motion for summary judgment, which seeks a declaration that defendants have violated Administrative Code § 13-218 (h), is granted; and it is further ordered that the branch of defendants’ cross motion for summary judgment dismissing the complaint is denied; and it is further adjudged and declared that defendants the City of New York, the New York City Police Pension Fund, and the Board of Trustees of the New York City Police Pension Fund have violated and continue to violate Administrative Code § 13-218 (h) by refusing to permit all police officers, including those hired on or after July 1, 2009 in tier 3, from availing themselves of the benefits afforded by that statute; and it is further adjudged that plaintiff Patrolmen’s Benevolent Association of the City of New York, Inc. do recover from defendants the City of New York, the New York City Police Pension Fund, and the Board of Trustees of the New York City Police Pension Fund costs in the amount of $200 and disbursements in the amount of $550, making in all a total of $750.