[12 NE3d 429, 989 NYS2d 431]

In the Matter of DAVID KASLOW, Respondent, v CITY OF NEW YORK et al., Appellants.

Argued February 11, 2014; decided April 3, 2014

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Keith M. Snow* and *Paul T. Rephen* of counsel), for appellants. The lower courts erred in directing the New York City Employees' Retirement System to award an additional pension benefit calculation for prior non-correction city service under the Tier 3 CO-20 plan. (*Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275; *Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 11 NY3d 559; *Morales v County of Nassau*, 94 NY2d 218; *Matter of Wertheim v New York City Teachers' Retirement Sys.*, 91 AD2d 514; *Matter of Roberts v Murphy*, 2 NY3d 641; *Benesowitz v Metropolitan Life Ins. Co.*, 8 NY3d 661; *Matter of Guido v New York State Teachers' Retirement Sys.*, 94 NY2d 64.)

*Koehler & Isaacs LLP*, New York City (*Mercedes Maldonaldo* of counsel), for respondent. I. The standard of review is de novo; the New York City Employees' Retirement System's interpretation of credited service under Retirement and Social Security Law § 504-a (b) (4) is entitled to no deference. (*Matter of Howard v Wyman*, 28 NY2d 434; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Matter of McGarrigle v City of New York*, 23 AD3d

196; *Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669.) II. Retirement and Social Security Law § 504-a (b) (4), by way of plain language and legislative intent, entitles David Kaslow to the same application of credited service as a Tier 2 plan member and therefore entitles Mr. Kaslow to the same civilian service credit that applies to Tier 2. (*Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669; *Matter of Schriro v New York State Teachers' Retirement Bd.*, 63 AD2d 751; *Matter of Orens v Novello*, 99 NY2d 180; *Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y.*, 86 NY2d 198; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205.) III. Legislative history also supports that the Tier 3 CO-20 plan did not forfeit credit for civilian service. IV. By forfeiting credit for civilian time, the New York City Employees' Retirement System has diminished David Kaslow's pension in violation of article V, § 7 of the New York Constitution. (*Ballentine v Koch*, 89 NY2d 51; *Matter of Guzman v New York City Employees' Retirement Sys.*, 45 NY2d 186; *Kranker v Levitt*, 30 NY2d 574.)

## OPINION OF THE COURT

READ, J.

Petitioner David Kaslow (Kaslow), a member of the Tier 3 CO-20 retirement plan established by Retirement and Social Security Law § 504-a (hereafter, the Tier 3 CO-20 plan), retired from his position as a correction officer with the New York City Department of Correction (DOC) on July 2, 2009. For the reasons that follow, we conclude that Kaslow's pension is defined in its entirety by Retirement and Social Security Law § 504-a (c) (2). As a result, the New York City Employees' Retirement System (NYCERS) properly did not consider Kaslow's previous civilian service with the New York City Department of Environmental Protection (DEP) when calculating his pension benefit.

## I

Kaslow worked at DEP as a storekeeper from September 1987 until April 1991. While employed at DEP, he was a Tier 4 NYCERS member. On April 25, 1991, however, Kaslow was appointed a correction officer at DOC. Because he was first employed at DOC after December 19, 1990, when the statute establishing the Tier 3 CO-20 plan took effect, Kaslow was required to become a plan participant as of the date of his appointment (*see* Retirement and Social Security Law § 504-a [b]

[4];[1] L 1990, ch 936, § 6). The Tier 3 CO-20 plan provides for a half-pay pension after 20 years of uniformed service and, for correctional service beyond 20 and up to a maximum of 30 years, an additional benefit of one sixtieth of final average salary per year of service (*see* Retirement and Social Security Law § 504-a [c] [2]).[2]

In 2001, Kaslow bought back service credit for three years of military service (*see* Retirement and Social Security Law § 1000 [allowing members of the state's public retirement systems to purchase up to three years of service credit for military service rendered during periods of military conflict]). As a result, Kaslow's earliest retirement date was in 2008 and, beginning in 2006, he periodically sought pension benefit estimates from

---

**1.** Paragraph (4) of subdivision (b) (entitled "Participation in twenty-year retirement program") of section 504-a states as follows:

"4. Each New York city correction member . . . who becomes subject to the provisions of this article [14] after the starting date of the twenty-year retirement program [i.e., December 19, 1990] . . . shall become a participant in the twenty-year retirement program on the date he or she becomes such a correction member. Notwithstanding any other provision of law to the contrary, a New York city correction officer . . . who becomes a participant in the twenty-year retirement program pursuant to this paragraph by becoming subject to the provisions of this article [14] after the starting date of the twenty-year retirement program shall have the term 'credited service' applied to him or her in the same manner as such term would be applied to a similarly situated correction officer . . . who is governed by article eleven of this chapter, and who is a participant in the twenty-year improved benefit retirement program pursuant to section four hundred forty-five-a of such article eleven."

**2.** This provision states that

"2. (i) Notwithstanding any other provision of law to the contrary, the early service retirement benefit for participants in the twenty-year retirement program who retire pursuant to [section 504-a (c) (1)] shall be a pension consisting of:

"(A) an amount, on account of twenty years of credited service, equal to one-half of his or her final average salary; plus

"(B) an amount for each additional year of credited service, or fraction thereof, beyond such twenty years of credited service equal to one-sixtieth of the final average salary for such credited service during the period from the completion of twenty years of credited service to the date of retirement.

"(ii) The maximum pension computed without optional modification payable pursuant to subparagraph (i) of this paragraph shall equal that payable upon completion of thirty years of service" (Retirement and Social Security Law § 504-a [c] [2]).

NYCERS. Kaslow repeatedly inquired as to what pension benefit he would receive for his three-plus years of civilian service at DEP, and different NYCERS personnel just as repeatedly advised him that this service did not factor into the calculation of his pension.

On December 8, 2008, an attorney at the law firm that represents Kaslow's union wrote to NYCERS, stating that her "inquiry pertain[ed] to how NYCERS [would] credit[ ] . . . the [time] that [Kaslow] worked for the DEP" when determining his pension benefit. She noted that Retirement and Social Security Law § 504-a (b) (4) "entitled [Kaslow] to have the term 'credited service' applied to him in the same manner as it would be applied to" a correction officer in Tier 2 who opted into the CO-20 retirement plan established by Retirement and Social Security Law § 445-a (hereafter, the Tier 2 CO-20 plan). The Tier 2 CO-20 plan, like the Tier 3 CO-20 plan, went into effect on December 19, 1990. The attorney took the position that since the benefit formula for these Tier 2 correction officers counts civilian service with the City of New York (the City or City) pursuant to New York City Administrative Code § 13-155 (a) (3) (c),[3] Kaslow was likewise entitled to a pension benefit for his service at DEP.

By letter dated March 25, 2009, NYCERS' general counsel responded that the "look back" to section 13-155 of the Administrative Code was only for purposes of defining service as "allowable service" in the City's uniformed correction force, which would include service in DOC, or in, for example, the Police or Fire or Sanitation Departments immediately preceding service in DOC. She explained that Retirement and Social Security Law § 504-a (c) (2) governed the computation of Kaslow's pension benefit under the Tier 3 CO-20 plan, and this provision does not take civilian government employment into account.

---

**3.** Section 13-155 is entitled "Optional retirement after twenty or twenty-five years of allowable service rendered in the uniformed correction force," and applies to correction officers in Tiers 1 and 2 of NYCERS. Section 13-155 (a) (3) (c) calls for a pension after 20 years of allowable service to include, among other components,

> "seventy-five per cent of one-sixtieth of [the correction officer's] final compensation multiplied by: (1) the number of years of city-service after October first, nineteen hundred fifty-one, acquired other than in the uniformed correction force, and (2) the number of years of service in the uniformed correction force credited to [the correction officer] in excess of twenty" (Administrative Code §§ 13-155 [a] [3] [c]; 13-101 [3]).

In June 2009, Kaslow applied for retirement from DOC to take effect on July 2, 2009. On November 12, 2009, NYCERS informed Kaslow that his retirement had been approved, and that he would receive a total annual pension benefit of $54,640.19 ($4,553.34 per month). Meanwhile, in October 2009 Kaslow commenced this CPLR article 78 proceeding against the City and NYCERS. He asked Supreme Court to declare unlawful NYCERS' refusal to credit his DEP service "at the rate of 75% of 1/60th of his final average salary per year of DEP service" (cf. Administrative Code § 13-155 [a] [3] [c]);[4] to direct NYCERS to recalculate his pension to include his DEP service; and to enjoin NYCERS from refusing to grant service credit "at the rate of 75% of 1/60th of final average salary per year of civilian service." In a short-form order dated April 6, 2011, Supreme Court granted Kaslow's petition "in its entirety," and directed NYCERS to "recalculate [Kaslow's] pension to include his DEP service." The City and NYCERS appealed.

In a decision and order dated January 16, 2013, the Appellate Division affirmed, concluding that NYCERS' interpretation of the term "credited service" in section 504-a of the Retirement and Social Security Law was "irrational, unreasonable, and inconsistent with the other applicable statutes governing the retirement benefits of officers employed with the DOC" (102 AD3d 785, 786 [2d Dept 2013], citing Retirement and Social Security Law §§ 504-a [b], [c]; 445-a; Administrative Code § 13-155 [a] [3] [c]). Thus, the court continued, "for purposes of calculating his retirement benefits, [Kaslow] was entitled to have his credited service include his civilian service" with the City (id.). We subsequently granted the City and NYCERS leave to appeal (21 NY3d 854 [2013]), and now reverse.

## II

NYCERS is the public employee retirement system responsible for administering the retirement programs for employees of the City and various City-related participating employers (e.g., the City University of New York) (see generally L 1920, ch 427).

4. "Final average salary," a three-year average, is not the same as "final compensation," the salary base for computation of benefits specified by Administrative Code § 13-155 (a) (3) (c). As previously observed, this provision applies to Tier 1 and 2 correction officers; however, article 11 of the Retirement and Social Security Law, which places limitations on section 13-155 benefits for Tier 2 correction officers, specifies the use of final average salary as the salary base for determining Tier 2 benefits (see Retirement and Social Security Law § 443 [a], [d], [e]; Administrative Code § 13-638.4).

City employees become members of NYCERS, which manages the system's invested funds and determines and pays out benefits to retirees according to requirements established by state and city law. In general, a member's retirement benefits vary by tier and plan, which are determined by date of membership and job title, respectively.

The legislature adopted the Tier 2 CO-20 and Tier 3 CO-20 plans to bring city correction officers below the rank of captain into rough parity with other uniformed city employees (in particular, police and firefighters), who already enjoyed a 20-year half-pay retirement plan (*see* Sponsors' Mem, Bill Jacket, L 1990, ch 936 at 17). This pension improvement was to be paid for by increased employee contributions (*id.*). Prior to chapter 936's enactment, Tier 2 and 3 correction officers were eligible to retire before the normal retirement age without benefit reduction, but only after 25 years of service. The eligibility requirements and benefit calculations for these plans differed.

Tier 2 correction officers[5] were entitled to an unreduced pension upon completion of 25 years of uniformed correction service (*see* Administrative Code § 13-155 [b] [a correction member may elect "to contribute on the basis of a minimum retirement period of twenty-five years of *allowable service rendered in such correction force*" (emphasis added)]). That is, NYCERS only credited service in the uniformed force of DOC or in another uniformed force (*e.g.* New York City Housing Police, Transit Police, Department of Sanitation, Police Department or Fire Department) immediately prior to the employee's appointment at DOC.[6] NYCERS *excluded* non-uniformed state or city public service (if any) when determining a Tier 2 correction officer's eligibility for 25-year early service retirement. As noted earlier, though, such service would figure into the calculation of the Tier 2 correction officer's pension benefit (*see supra* at 82 n 3).

By contrast, NYCERS credited service with both uniformed and non-uniformed state and city employers when determining

---

**5.** Correction officers who joined NYCERS on or after July 1, 1973 and before July 27, 1976 became Tier 2 members. Tier 2 members of NYCERS are subject to the provisions of article 11 of the Retirement and Social Security Law.

**6.** As this case illustrates, NYCERS also considers certain military service to be allowable correction service.

the eligibility of Tier 3 correction officers[7] for 25-year early service retirement. Indeed, section 501 (3) of the Retirement and Social Security Law defines "[c]redited service" for purposes of article 14 (Tier 3) to mean

"all service which has been credited to a member pursuant to section [513] or which was credited to such member in a public retirement system of the state before such member became subject to this article and which is allowable as previous service pursuant to section [513]."

Retirement and Social Security Law § 513, entitled "Credit for service," generally provides in subdivision (b) for credit for most public service rendered in the state or City.[8] The 25-year early service retirement benefit for Tier 3 correction officers is 50% of final average salary.[9]

It was against this backdrop that the legislature in chapter 936 created three new 20-year early service retirement plans for correction officers below the rank of captain: the "optional" Tier 2 CO-20 plan for incumbent Tier 2 correction officers who

---

**7.** Correction officers who joined NYCERS on or after July 27, 1976 became Tier 3 members eligible for the 25-year service retirement plan. This option was no longer available, however, once the Tier 3 CO-20 plan became effective on December 19, 1990. Tier 3 members of NYCERS are subject to the provisions of article 14 of the Retirement and Social Security Law.

**8.** This provision states that

"[a] member shall be eligible to obtain retirement credit hereunder for previous service with a public employer if retirement credit had previously been granted for such service or if such service which would have been creditable in one of the public retirement systems of the state, . . . at the time such service was rendered, if the individual had been a member of such retirement system and the member has rendered a minimum of two years of credited service after July [1, 1976] or after last rejoining a public retirement system, if later; provided, however, retirement credit may be granted for service which predates the date of entry into the retirement system if such service is otherwise creditable and was rendered by an employee of a public employer during which employment he was ineligible to join a public retirement system provided that such public employer was participating in a public retirement system of the state at the time of such employment, or is so participating at the time that credit for such previous service is being sought" (Retirement and Social Security Law § 513 [b]).

**9.** Specifically, these Tier 3 correction officers are entitled to a pension "equal to one-fiftieth of final average salary times years of credited service at the completion of twenty-five years of service, but not in excess of fifty percent of final average salary" (*see* Retirement and Social Security Law § 504 [d]; *see also* L 1982, ch 726, § 2; L 1990, ch 936, § 5).

elected to participate (*see* Retirement and Social Security Law § 445-a [b] [2]); the Tier 3 CO-20 plan for incumbent Tier 3 correction officers and anyone who was subject to article 14 prior to December 19, 1990 and subsequently became employed as a correction officer, also an elective program (*see* Retirement and Social Security Law § 504-a [b] [1], [2]); and the Tier 3 CO-20 plan for correction officers who first became subject to the provisions of article 14 after December 19, 1990, who were mandated to join (*see* Retirement and Social Security Law § 504-a [b] [4]).[10] The kind of service that fulfills the requirement for 20 years of "credited service" varies by tier and, within Tier 3, by the date when the correction officer first became a Tier 3 employee.

As noted earlier, NYCERS has always interpreted "credited service" for Tier 1 and 2 correction officers to be limited to "allowable correction service"—i.e, uniformed service only. And NYCERS has also always interpreted "credited service" for Tier 3 correction officers, as directed in Retirement and Social Security Law §§ 501 (3) and 513, to include both uniformed and nonuniformed service with the state and City. Chapter 936 does not change this service-crediting distinction between Tiers 2 and 3 *except* with respect to those correction officers who, like Kaslow, first became subject to article 14 after December 19, 1990. For these Tier 3 employees,

> "the term 'credited service' [shall be] applied to him or her in the same manner as such term would be applied to a similarly situated correction officer . . . who is governed by article eleven of this chapter, and who is a participant in the twenty-year improved benefit retirement program pursuant to section four hundred forty-five-a of such article eleven" (Retirement and Social Security Law § 504-a [b] [4]).

Thus, NYCERS argues, for post-December 19, 1990 Tier 3 CO-20 plan members, unlike the other participants in Tier 3

10. As of October 19, 2004, newly employed Tier 3 correction officers below the rank of captain and certain other correction force members were mandated to join the Tier 3 CO-20 plan established by Retirement and Social Security Law § 504-d in lieu of the section 504-a plan (*see* L 2004, ch 622, §§ 2, 3, 11, 16). The eligibility criteria and retirement benefit for these two plans are essentially the same (*compare* Retirement and Social Security Law § 504-a [b] [4]; [c] *with* Retirement and Social Security Law § 504-d [b] [1]; [c]). The legislature, however, increased the additional member contributions payable by participants from 3.61% to 4.61% (*compare* Retirement and Social Security Law § 504-a [e] [1] [ii] *with* Retirement and Social Security Law § 504-d [e] [1]).

CO-20 plans established by chapter 936, only allowable correction service (i.e., uniformed service) counts towards eligibility for 20-year early service retirement because this is the only kind of service that has ever been considered "credited service" for Tier 2 correction members, as the legislature knew.[11] This limitation on eligibility makes sense because, insofar as the 20-year half-pay retirement benefit was to be funded by plan participants, the legislature would naturally want to make new Tier 3 correction officers pay the additional member contributions for the maximum 20 years.

Kaslow does not dispute that "credited service" means "allowable correction service" (i.e., uniformed service) for purposes of his benefit eligibility. Rather, he interprets the reference to "credited service" in section 504-a (b) (4) more broadly so as also to encompass and incorporate the Tier 2 benefit calculation formula in section 13-155 (a) (3) of the Administrative Code, as modified by article 11. Thus, he reasons, since a Tier 2 correction officer's 20-year service pension includes a calculation for non-uniformed government service, his pension should, too.

NYCERS responds that section 504-a (c) (2) specifies the entire pension benefit for participants in the Tier 3 CO-20 plan, and this provision does not include a component to reflect any previous civilian government service; that "credited service" is a term of art referring to the kind of service that counts towards pension eligibility; and that, as a result, the reference to "credited service" in section 504-a (b) (4) simply reflects the legislature's intention to apply Tier 2 service eligibility rules to employees covered by that provision. Further, NYCERS adds, section 13-155 (a) of the Administrative Code, which Kaslow relies on, specifies that credited service is *"allowable service rendered in the uniformed correction force"* (emphasis added), and the pension formula in section 13-155 (a) (3) uses the word "credited" with reference to a correction officer's uniformed service, and the word "acquired"—not "credited"—with respect to City-service (*see* Administrative Code § 13-155 [a] [3] [a]-[c]).

NYCERS' interpretation of the meaning of "credited service" in the context of section 504-a (b) (4) and the Tier 3 CO-20 program enjoys a degree of deference (*see Matter of Suffolk*

---

**11.** The legislature did not define the term "credited service" in section 445-a or elsewhere in article 11.

*Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 11 NY3d 559, 567 [2008] ["Even if no deference is owed to an agency's reading of a statute, a court can nevertheless defer to an agency's definition of a term of art contained within a statute"]). What constitutes "credited service" obviously differs from plan to plan, and NYCERS is the expert agency vested by the legislature with the authority to manage the City's complex public employee retirement plans (*see Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation*, 18 NY3d 289, 296 [2011] ["Courts regularly defer to the governmental agency charged with the responsibility for administration of (a) statute in those cases where interpretation or application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom" (internal quotation marks and citations omitted)]).

Moreover, NYCERS' explanation of how section 504-a (b) (4) applies and fits into the overall statutory design is coherent and reasonable. By contrast, Kaslow's interpretation conflicts with Retirement and Social Security Law § 504-a (c) (2), which provides, as a pension component, for an amount equal to one sixtieth of the final average salary for uniformed DOC service beyond 20 years (*see* Retirement and Social Security Law § 504-a [c] [2] [i] [B]). But section 13-155 (a) (3) (c) of the Administrative Code, as modified by article 11, calls for an amount equal to *75% of one sixtieth* of final average salary multiplied by the number of years of such post-20 year DOC service plus the number of years of previous non-uniformed service. Kaslow's proposed pick-and-choose approach—claiming a benefit for non-uniformed service under section 13-155 (a) (3) (c) but electing to apply the higher fraction in section 504-a (c) (2) (i) (B) to compute the amount owed him for additional correction service—would maximize his pension but does not create a harmonious whole.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order reversed, with costs, and petition dismissed.