# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 44
Patrick Lynch, &c. et al.,
        Appellants,
    v.
City of New York, et al.,
        Respondents.

Robert S. Smith, for appellants.
John Moore, for respondents.

FAHEY, J.:

The Appellate Division order should be reversed and Supreme Court's judgment declaring that defendants violated the second subdivision (h) of Administrative Code of the City of New York § 13-218 by excluding police officers in tier 3 of the state retirement

system from the retirement benefits conferred by that subdivision reinstated. Applying longstanding, basic rules of statutory interpretation, we conclude that the relevant part of Administrative Code § 13-218 renders officers of the New York City Police Department (NYPD) who are members of the tier 3 retirement system eligible for credit for certain periods of unpaid childcare leave, and that the grant of such benefits for those officers is consistent with the Retirement and Social Security Law (RSSL).

I.

In July 1976 the legislature adopted, and Governor Carey approved, legislation that fundamentally reformed the state pension system (*see Civil Serv. Empls. Assn., Local 1000, AFSCSME, AFL-CIO v Regan*, 71 NY2d 653, 657 [1988]). Included in those changes was the rule that any public employee hired on or after July 1, 1976 would be enrolled in the newly-created tier 3 system (*see id.*; *see also* RSSL article 14 [containing RSSL 500-520 and creating the tier 3 retirement system]). We previously characterized that program as one "designed to 'provid[e] uniform benefits for all public employees and eliminat[e] the costly special treatment of selected groups . . . inherent in the previous program' " (*Lynch v City of New York*, 23 NY3d 757, 765 [2014], quoting Mem from Robert J. Morgado [Secretary to the Governor] to Judah Gribetz [Governor's Counsel], Bill Jacket, L 1976, ch 890).

An exception to that pension reform allowed all police officers and firefighters who subsequently entered or reentered a public retirement system to continue as tier 2 members (*see* RSSL § 440 [c]; *Lynch*, 23 NY3d at 766; *see also* RSSL article 11 [containing RSSL 440-451 and embodying the tier 2 retirement system]; L 1973, ch 382, § 47 [creating the

tier 2 retirement system in 1973]). That exception, maintained by regular two-year extender bills, eventually was terminated by veto of Governor Paterson in 2009 (*see Lynch*, 23 NY3d at 767). Thereafter, as relevant here, all NYPD officers appointed between July 1, 2009 and March 31, 2012 were placed in tier 3 of the New York City Police Pension Fund (PPF)[1] (*see id.* at 765); all officers appointed after April 1, 2012 were placed in revised but functionally similar tier 3 plans of the same pension fund (*see* RSSL 501 [26], [28]).

At issue on this appeal is the policy of defendant City of New York that tier 3 officers are not eligible for certain benefits indisputably available to officers in tier 2 of the PPF retirement plan, including the "credit for service" mechanism that allows police officers to obtain credit for certain periods of absence without pay for childcare leave. Administrative Code § 13-218 contains two subdivisions (h). That mechanism is embodied in the second of the two subdivisions (h) of section 13-218, which was part of a series of pension initiatives intended to ensure that members who became parents and temporarily left service were not pressured to "rush back to the workplace without properly caring for their children" (Bill Jacket, L 1999, ch 646, at 9; *see id.* at 3, 8) and later were "not punished in their retirement for their willingness to play an active role in their child's growth" (*id.*

---

[1]      "There are five City retirement systems, covering different categories of employees: PPF, [the New York City Fire Department Pension fund (FDPF)],
the Teachers' Retirement System (TRS), the Board of Education Retirement System (BERS) and the New York City Employees' Retirement System (NYCERS)" (*Lynch*, 23 NY3d at 761 n 1).

at 9).[2]  At its core, that subdivision provides that any PPF member absent without pay for childcare leave permitted under NYPD regulations shall be eligible for a limited amount of credit for that leave if certain filing and reimbursement requirements are met (*see* Administrative Code § 13-218 [h]).

Plaintiffs commenced this action seeking, among other things, judgment declaring that *all* police officers hired by the NYPD, including those hired on or after July 1, 2009, are eligible for the benefits afforded by the second subdivision (h) of section 13-218.  That is, plaintiffs contended that, even in the absence of the extender bill vetoed by Governor Paterson, all members of the PPF—regardless of hire date—may purchase pension credit for time spent on unpaid childcare leave.

Defendants, by contrast, asserted that the relevant provisions of the RSSL conflict with the Administrative Code and that the pension rights of tier 3 police officers are exclusively governed by article 14 of the RSSL.  Specifically, according to defendants, RSSL 513 (h) "addresses the issue of service credit for [childcare] leave," overrides any

---

[2]      The bill jacket for L 1999, ch 646, among other things, explains the motivation for amendments to RSSL 645, which is entitled "Benefits for certain members who reenter public service."  Those amendments to RSSL 645 allowed certain "current or future members of New York public retirement systems who previously were members of a New York public retirement system to be deemed to have become members of their current systems as of the original date of such previous ceased membership" (Bill Jacket, L 1999, ch 646 [fiscal notes]).  The purpose of those changes, therefore, was restorative: those who reentered public service following a temporary departure were returned to their prior tier placement (*see id.*; *see also* L 2000, ch 552 [expanding the scope of prior creditable service in RSSL 446 (b), RSSL 513 (b), and RSSL 609 (b) (1)]).  The second subdivision (h) of Administrative Code § 13-218 had a similar intent: it allows "men and women who . . . interrupted their careers to raise their children the opportunity to obtain retirement credit for such leave" (Bill Jacket, L 2000, ch 594, at 12).

like provision of Administrative Code § 13-218, and "limits the eligibility for such credit to New York City correction officers hired before April 1, 2012."

Following motion practice, Supreme Court, in relevant part, awarded plaintiffs judgment declaring that the affected police officers are entitled to the childcare leave benefit (56 Misc 3d 433 [Sup Ct, New York County 2017]). That court reasoned that Administrative Code § 13-218 (h), on its face, renders any member of the PPF eligible for the childcare leave service credit benefit, and that the RSSL does not conflict with or preempt that part of the Administrative Code (*see* 56 Misc 3d at 442-443).

The Appellate Division reversed, denying plaintiffs' motion for summary judgment and granting defendants' cross motion for accelerated relief (162 AD3d 589, 589 [1st Dept 2018]). The Court reasoned that because the RSSL expressly makes the childcare leave service credit benefit in question available to correction officers, but does not expressly confer the same benefit upon police officers, the legislature meant to nullify the part of the Administrative Code allowing the buyback to police members of the retirement system (*see* 162 AD3d at 591, citing RSSL 513 [h]).

We subsequently granted plaintiffs leave to appeal (32 NY3d 915 [2019]), and we now reverse the Appellate Division order and reinstate Supreme Court's judgment.

II.

Our review begins with reference to longstanding, basic rules of statutory interpretation. In such matters our "primary consideration is to ascertain and give effect to the intention of the [l]egislature" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 77 [2008]). "The starting point" in that exercise "is the language of the statute itself" (*Yatauro v*

*Mangano*, 17 NY3d 420, 426-427 [2011]). The rule of statutory interpretation relevant here is that the literal language of a statute controls "unless the plain intent and purpose of [the] statute would otherwise be defeated" (*Matter of Anonymous v Molik*, 32 NY3d 30, 37 [2018] [internal quotation marks omitted]).

The second subdivision (h) of Administrative Code § 13-218 is entitled "Credit for service" and allows PPF members to obtain credit for certain periods of absence without pay for childcare leave. It provides, in relevant part, that:

> "***any member*** who is absent without pay for child care le[a]ve of absence pursuant to regulations of the New York city police department shall be eligible for credit for such period of child care leave provided such member files a claim for such service credit with the pension fund by December [31, 2001], or within [90] days following termination of the child care leave, whichever is later, and contributes to the pension fund an amount which such member would have contributed during the period of such child care leave, together with interest thereon. Service credit provided pursuant to this subdivision shall not exceed one year of credit for each period of authorized child-care leave. In the event there is a conflict between the provisions of this subdivision and the provisions of any other law or code to the contrary, the provisions of this subdivision shall govern" (§ 13-218 [h] [emphases supplied herein], added by L 2000, ch 594, at 12).

None of the pertinent parts of that statute is ambiguous. "Any member" can mean only what it says. The reference to "any member" is unbounded and unfixed to employees of a particular tier, and the absence of an exception applicable to tier 3 employees cannot reasonably be attributed to carelessness or mistake (*cf.* Administrative Code §§ 13-234 [i] [4]; 256.1 [b] [expressly excluding tier 3 members of the PPF]). Although there were no tier 3 police officers when this part of the Administrative Code was passed, that fact is

irrelevant. Inasmuch as it does not distinguish between tiers of officers, and simply provides that "any member," regardless of retirement tier, is eligible for the childcare leave service credit benefit, the second subdivision of Administrative Code § 13-218 (h) necessarily opens that benefit to tier 3 officers.

In view of that plain language conclusion, there is no need to consider the legislative history of Administrative Code § 13-218 (h) (*see Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293, 304-305 [1961]).[3] Consequently, our review proceeds directly to the question whether the RSSL conflicts with that part of the Administrative Code or otherwise defeats the childcare service credit benefits provided therein.

Defendants direct us to RSSL 513 (h), which was enacted in 2005 (*see* L 2005, ch 477) and which affords childcare service credit benefits to correction officers through this text:

> "h. . . . any general member in the uniformed **correction force** of the New York city department of correction who is absent without pay for a child care leave of absence pursuant to regulations of the New York city department of correction shall be eligible for credit for such period of child care leave provided such member files a claim for such service credit with the retirement system by December [31, 2005] or within [90] days of the termination of the child care leave, whichever is later, and contributes to the retirement system an amount which such member would have contributed during the period of such child care leave, together with interest thereon. Service credit provided pursuant to this subdivision shall not exceed one year

---

[3]   Even if we were to consider the legislative history of Administrative Code § 13-218 (h), it would not support defendant's arguments. As the Appellate Division correctly observed, "[t]he legislative history of section 13-218 (h) does not reflect any intent to distinguish between the tiers in the pension system" (162 AD3d at 590 n).

of credit for each period of authorized child-care leave" (RSSL 513 [h] [emphases added]).

That section also contains a supremacy clause providing that,

"[i]n the event of a conflict between the provisions of [RSSL 513 (h)] and the provisions of any other law or code to the contrary, the provisions of [RSSL 513 (h)] shall govern, provided, however, that the provisions of this subdivision shall not apply to a member of the uniformed force of the New York city department of correction who is a New York city uniformed correction/sanitation revised plan member" (RSSL 513 [h]).

Significantly, neither the allocative component of RSSL 513 (h) nor its supremacy clause addresses the part of the Administrative Code at issue. At bottom, the relevant portion of the Administrative Code allows PPF members to purchase service credit for time that otherwise would have been lost to childcare leave by contributing an amount equal to what would have been supplied if the employee had not taken childcare leave. The RSSL, by contrast, is silent with respect to that point.

Legislative silence, in this context, is acquiescence. The childcare service credit benefits conferred upon PPF members by the Administrative Code survive (*see Engle v Talarico*, 33 NY2d 237, 242 [1973] ["(w)here the practical (view) of a statute is well known, the (l)egislature is charged with knowledge and its failure to interfere indicates acquiescence"]). Had the legislative intended otherwise, it easily could have said as much. Our longstanding rules of statutory interpretation do not allow the relevant parts of the Administrative Code and the RSSL to be construed to reach a different result.[4] Indeed, our

---

[4]     To the extent the Appellate Division suggested that the courts should look to the legislative history of RSSL 513 (h)—despite the clear language of the text—to determine

own authority requires that "we must, if at all possible, give full effect to both" the

Administrative Code and the RSSL (*People v Newman*, 32 NY2d 379, 389 [1973], *cert*

---

the meaning of Administrative Code § 13-218 (h), we disagree. The Appellate Division order relied upon, among other things, the Bill Jacket to L 2012, ch 18 (*see* 162 AD3d at 591) as demonstrating that the legislature understood the unpaid childcare leave service credit benefit in Administrative Code § 13-218 (h) to be unavailable to tier 3 police officers; specifically, the legislature made newly hired tier 3 correction officers ineligible for the benefit in order to equate the benefits of newly-hired correction officers with those of PPF tier 3 members (*see* 162 AD3d at 591). In that vein, the Appellate Division specifically quoted a memorandum in support of that bill in which the Senate Introducer noted that the measure "would amend RSSL § 513 to make new NYC Tier 3 uniformed correction members ineligible to obtain service credit for child care leave in order to equate their benefits with Tier 3 police/fire benefits" (Senate Introducer's Mem in Support, Bill Jacket, L 2012, ch 18 at 10; *see* 162 AD3d at 591).

Defendants largely avoid reliance upon that bill jacket in their brief to this Court, and with good reason. The legislative amendments in question did not operate upon Administrative Code § 13-218 (h) (*cf.* 162 AD3d at 591), which, as noted conferred the childcare leave service credit benefit upon tier 3 PPF members, and instead recast RSSL 513 (h). Prior to those amendments, RSSL 513 (h) had expressly conferred childcare leave service credit rights upon correction officers. By the amendments, which included the addition of the part of the aforementioned "superiority language" in which RSSL 513 (h) is rendered inapplicable to a newly-hired "member of the uniformed force of the New York city department of correction who is a New York city uniformed correction/sanitation revised plan member" (*id.*; *see* L 2012, ch 18, § 21), the legislature excepted certain correction officers from eligibility for such benefits.

That, of course, is a winding way of saying that the 2012 legislative action to which the Appellate Division pointed did not affect the rights of tier 3 PPF officers under Administrative Code § 13-218 (h), and that the Senate Introducer's Memorandum reflects a fundamental misunderstanding of both the rights afforded tier 3 PPF members pursuant to the relevant part of the Administrative Code and of the impact of the 2012 amendments to RSSL 513 (h) upon those rights. In any event, but perhaps most importantly, even if the legislative changes it covered were related to this case, the part of the 2012 bill jacket on which the Appellate Division relies would be of little to no value in constructing the meaning of Administrative Code § 13-218 (h) if we had occasion to engage in such a review. That part of the Administrative Code was enacted in 2000 (*see* L 2000, ch 594), and the views that a member or certain members of the State Senate expressed with respect to that prior statute are of minimal value.

*denied* 414 US 1163 [1974]).  We conclude that RSSL 513 (h) does not prohibit the benefit conferred in Administrative Code § 13-218 (h).

                                        III.

Defendants' three principal contentions to the contrary are unavailing.

*First*, according to defendants, the Administrative Code cannot be the source of a substantive benefit for tier 3 members because RSSL 519 (1) provides that the RSSL is a "stand-alone retirement structure of benefits and contributions."  Read in its entirety, however, RSSL 519 (1) creates no such exclusivity.  In fact, that statute incorporates by reference relevant parts of, among other things, the Administrative Code that do not conflict with the guidelines of the RSSL. [5]

*Second*, contrary to defendants' further contention, that exclusivity theory lacks support in our case law.  Defendants' reliance upon *Lynch v City of New York* (23 NY3d 757 [2014]) is misplaced.  There, we addressed the question whether RSSL 480 (b), which was enacted in 1974 and which extended any program in which an employer in a public retirement system funded by the state or one of its subdivisions assumed all or part of the contribution that would otherwise be made by employees toward retirement, applied to tier

---

[5]      RSSL 519 is entitled, "Effect of other laws," and subdivision (1) of that statute provides that

> "[a]ny other provision of this chapter [of the RSSL], of the state education law, or of the administrative code of the City of New York, or rules and regulations thereunder, relating to the reemployment of retired members, transfer of members and reserves between systems and procedural matters shall apply to members covered under this article during the duration thereof unless inconsistent herewith."

3 members of the PPF and the FDPF (*see Lynch*, 23 NY3d at 760). For reasons unrelated to the interaction of the RSSL and the Administrative Code, we concluded that it did not (*see id.* at 772 [relying upon the extensive legislative history of the provision, including the Governor's Approval Mem (Bill Jacket, L 1973, ch 383 at 2), which stated that the statute was meant to " 'extend[] temporary retirement benefits for *present members*' of the programs to which it referred;" present members included only tier 1 and tier 2]). More importantly, we did not so much as hint that the RSSL might be the sole instrument for determining retirement benefits of tier 3 members; rather, we looked to the Administrative Code to determine whether the program at issue was applicable to tier 3 members, noting that another Code provision, governing calculation of the benefit, did not apply to all members but expressly carved out tier 3 members (*see id.* at 774, citing Administrative Code § 13-638.2 [g] [3]).

*Matter of Kaslow v City of New York* (23 NY3d 78 [2014]), on which defendants also rely in support of their exclusivity point, similarly is unavailing. There, to be sure, we rejected the contention of the petitioner (a retired New York City Department of Correction Officer [*see id.* at 81]) that his pension should have been calculated pursuant to the part of the Adminsitrative Code that would have embraced his prior service with a prior public employer (*see id.* at 86-87). Dissimilar to this matter, however, in that instance the relevant part of the RSSL (section 504-a [c] [2], which establishes a twenty-year retirement program for citycorrection members below the rank of captain and which is not implicated in this case) *specified the entire pension benefit* for such corrections officers (*see id.* at 87). This means that the Administrative Code played no role in the calculation of those benefits. In

this instance, as explained above, the RSSL does not exclusively govern tier 3 benefits

based on certain periods of unpaid childcare leave, meaning that *Kaslow* does not control

the result in this dispute.

*Third*, and finally, contrary to the conclusion of the Appellate Division (*see* 162

AD3d at 591) and to the suggestion of defendants on this appeal, here there is no distinction

relevant to our analysis between article 11 of the RSSL (which includes RSSL 446) and

article 14 of the RSSL (which includes RSSL 513 [h]).

This point is rooted in Administrative Code § 13-107 (k), which was added in 2004

(*see* L 2004, ch 581) and in which the legislature rendered

> "any correction member who is absent without pay for child
> care leave of absence pursuant to regulations of the New York
> city department of correction shall be eligible for credit for
> such period of child care leave provided such member files a
> [timely] claim for such service credit with the retirement
> system . . ." (§ 13-107 [k]).

The next year, the legislature amended RSSL 513 to, in the Appellate Division's

words, "expressly . . . make [that leave] benefit available to tier 3 correction officers" (162

AD3d 591; *see* L 2005, ch 477). That new statutory language tracked the text of

Administrative Code § 13-107 (k) insofar as it provided that

> "any general member in the uniformed correction force of the
> New York city department of correction who is absent without
> pay for a child care leave of absence pursuant to regulations of
> the New York City department of correction shall be eligible
> for credit for such period of child care leave provided such
> member files a [timely] claim for such service credit with the
> retirement system . . ." (RSSL 513 [h]).

That addition, the Appellate Division believed, was engendered by an oversight in which the legislature " 'accidentally omitted from the [2004] bill [enacting Administrative Code § 13-107 (k)]' " an express grant of a childcare leave service credit benefit for tier 3 correction officers (*see* 162 AD3d at 591, quoting Senate Introducer's Mem in Support, Bill Jacket, L 2005, ch 477, at 3).  Necessitating that amendment to the RSSL, the Appellate Division further believed, was a discrepancy between RSSL article 11 (which, as noted, governs retirement benefits for tier 2 members [*see* RSSL 440 (a)]) and RSSL article 14 (which, as also noted, governs retirement benefits for tier 3 members [*see* RSSL 500 (a)]) (*see* 162 AD3d at 591).  Specifically, that Court said,

> "[t]he RSSL had to be amended to accomplish the purpose [of making the unpaid child care leave service credit benefit available to tier 3 members] because [RSSL] article 14, which governs tier 3 employees, contains definitions of the terms 'credited service' and 'creditable service,' and expressly defines those terms by reference to RSSL § 513 ("Credit for Service") (*see* RSSL § 501 [3], [4]). Thus, a service credit not included in RSSL § 513 would not be available to tier 3 members.  (In contrast, article 11 contains a corresponding provision ['Credit for Service'] for tier 2 members [*see* RSSL § 446 (article 11)], but it defines only a few terms, and none of them [is] related to service credit.)" (162 AD3d at 591).

That is, at bottom, the Appellate Division believed that conferral of a childcare leave service credit benefit upon tier 3 correction officers—and, by extension, similarly situated tier 3 police officers—could not have been accomplished through the Administrative Code and required a subsequent amendment to RSSL 513 (h) because the RSSL defines "creditable service"—a phrase that embraces the childcare leave service credit in question—differently for members of tier 2 (through article 11 of the RSSL) and tier 3

(through article 14 of the RSSL) (*see* 162 AD3d at 591). A review of the relevant parts of the RSSL, however, reveals no material distinction in the description of that term. Article 11's definition of "creditable service" provides, among other things, that "retirement credit may be granted for service with an agency located within the state of New York currently specified in the law as providing retirement credit for service" (RSSL 446 [c]).[6] Article 14's definition of that phrase contains identical language (*see* RSSL 513 [c] [1]).[7]

---

[6] The whole of section 446 (c), which is entitled "Creditable service," reads as follows:

> "A member of a retirement system who is subject to the provisions of this article shall not be eligible to obtain retirement credit for service with a public employer other than the state of New York, a political subdivision thereof, a public benefit corporation, or a participating employer; provided, however, military service with the federal government may be credited pursuant to [Military Law § 243] up to a maximum of four years; and further provided that retirement credit may be granted for service with an agency located within the state of New York currently specified in the law as providing retirement credit for service" (RSSL 446).

[7] Section 513 (c) (1), in language substantively identical to that of RSSL 446 (c), defines "Creditable service" in this way:

> "A member shall not be eligible to obtain credit for service with a public employer other than the state of New York, a political subdivision thereof, a public benefit corporation, or a participating employer; provided, however, military service with the federal government may be credited pursuant to [Military Law § 243] up to a maximum of four years; and further provided that retirement credit may be granted for service with an agency located within the state of New York currently specified in law as providing retirement credit for service."

Consequently, the notion that a discrepancy in the characterization of creditable service for tier 2 and tier 3 members warranted amendment to RSSL 513 (h) to confer the childcare leave service credit benefit in question upon tier 3 PPF members (*see* 162 AD3d at 591) simply is misguided. Moreover, the reference by the Appellate Division to what, for purposes of this appeal, was the irrelevant amendment of RSSL 513 (h) is similarly misplaced. Nothing in either definition of creditable service prevents tier 3 PPF members from purchasing service credit for time spent on temporary childcare leave, and nothing in either of those definitional sections conflicts with the childcare leave service credit benefit conferred upon such members in the second subdivision (h) of Administrative Code § 13-218.

Accordingly, the Appellate Division order should be reversed, with costs, and the judgment of Supreme Court reinstated.

RIVERA, J. (dissenting):

New York City police officers are hired under a tiered employment structure that classifies officers based on their date of entry into service. On this appeal, plaintiffs argue that, like their peers in tiers 1 and 2, all tier 3 police officers are entitled to credit for time

spent on a child care leave of absence provided for in the Administrative Code of the City of New York. However, tier 3 was enacted in Article 14 of the Retirement and Social Security Law (RSSL) as part of a cost containment legislative reform package. Unlike the majority, I cannot interpret New York State's statutory benefit structure as revealing anything other than a legislative intent to limit this credit benefit to tier 1 and 2 police officers. The majority's singular reliance on the phrase "any member" in the Code begs the question of who is eligible for the benefit, and ignores that the legislature used this phrase at a time when all City police officers were classified in tiers 1 and 2 and that the RSSL does not expressly provide these benefits to tier 3 police officers.

I.

The New York City Police Pension Fund (NYCPPF) is one of the public employee pension systems in New York State. The NYCPPF was created pursuant to title 13, chapter 2, subchapter 2 of the Administrative Code of the City of New York (§§ 13-214-13-267.1). Police officers who joined the force prior to July 1, 1973 are classified in tier 1, while officers who joined from July 1, 1973 through July 26, 1976 are tier 2 members (*Lynch v City of NY*, 23 NY3d 757, 761 [2014]). Notably, tier 2 was created "[t]o deal with the 'steeply mounting cost of public employee pensions'" (*id.* at 762, quoting Governor's Approval Mem, Bill Jacket, L 1973, ch 383 at 2, 1973 McKinney's Session Laws of NY at 2343), and tier 2 member benefits are subject to both title 13 of the Administrative Code as well as article 11 of the Retirement and Social Security Law (RSSL) (*see* RSSL 440 [a]). Tier 1 member benefits are not subject to any provisions of the RSSL (*see* Administrative Code of City of NY § 13-214 [27]).

The legislature created tier 3 on July 27, 1976, through "a comprehensive pension reform bill" that enacted article 14 of the RSSL (*Lynch*, 23 NY3d at 765). Tier 3 was designed to provide uniform benefits for all public employees and to "eliminate the costly special treatment of selected groups which was inherent in the previous programs" (Mem from Robert J. Morgado, Bill Jacket, L 1976, ch 890, at 60). Although tier 3 status was meant to encompass all employees hired after July 1, 1976, police officers joining the force between 1976 and 2009 joined as tier 2 employees due to legislative extensions of tier 2 status for this category of public employee approximately every two years until June 2, 2009, when the Governor vetoed the two-year extender for 2009-2011 (*see Lynch*, 23 NY3d at 765-67; RSSL 440[a], [c]). Without the extender in place, new police officers hired after July 1, 2009 were classified as tier 3 members (*see Lynch*, 23 NY3d at 767; RSSL 440[c]).

Under article 14 of the RSSL (§§ 500-520; *see* § 500 [b] [1]), "[i]n the event that there is a conflict between the provisions of this article and the provisions of any other law or code, the provisions of this article shall govern" (RSSL 500 [a]).  Also, provisions of the RSSL and the Administrative Code "relating to the reemployment of retired members, transfer of members and reserves between systems and procedural matters shall apply to members covered under this article" unless inconsistent with RSSL article 14 (RSSL 519 [1]).

In this appeal, plaintiff Patrolman's Benevolent Association of New York and its president contend that Administrative Code § 13-218 (h), which provides "any member" with a child care leave of absence credit, applies to all New York City police officers,

regardless of when they were hired and their tier status and despite language in the RSSL proscribing such credit for tier 3 officers. The majority agrees, but there is no merit to this cramped interpretation of the broader public employee benefits scheme.

## II.

"The primary consideration of courts in interpreting a statute is to 'ascertain and give effect to the intention of the Legislature'" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000]), quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177). Generally, "the plain meaning of the statutory text is the best evidence of legislative intent" (*People v Cahill*, 2 NY3d 14, 117 [2003], citing *Riley*, 95 NY2d at 463).

However, to determine the intent of the legislature, "a statute . . . must be construed as a whole and . . . its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979] [internal citations omitted]). It is our "obligation to harmonize the various provisions of related statutes and to construe them in a way that renders them internally compatible" (*Matter of Aaron J.*, 80 NY2d 402, 407-408 [1992], citing *Mobil Oil Corp.*, 48 NY2d at 199-200; *see also Gaden v Gaden*, 29 NY2d 80, 86 [1971]; McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 98). Put another way, "[a]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof" (*People v Pabon*, 28 NY3d 147, 152 [2016], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]). Moreover, when the statutory text appears plain on its face, we must consider related provisions that might render such text ambiguous. "If the language is ambiguous, we may

examine the statute's legislative history" (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 286 [2009], quoting *Majewski v Broadalbin-Perth Cent. Sch. Dist.*, 91 NY2d 577, 583 [1998]).

This appeal is not the first occasion the Court has interpreted the RSSL to discern the availability of a benefit, and each time that we have done so, we have been careful not to truncate the analysis (*see e.g. Lynch*, 23 NY3d 757; *Matter of Sutka v Conners*, 73 NY2d 395 [1989]). As the Court explained in *Matter of Sutka*,

> "[T]he court's objective is, of course, to discern and apply the will of the Legislature, not the court's own perception of what might be equitable. . . . In matters of statutory interpretation generally, and particularly here, legislative intent is the great and controlling principle. Legislative intent may be discerned from the face of a statute, but an apparent lack of ambiguity is rarely, if ever, conclusive. . . . Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history"

(73 NY2d at 403 [internal citations and quotation marks omitted]). Further, "[w]here, as here, the Legislature has spoken to an issue simultaneously in separate laws, sometimes cross-referencing them, and has repeatedly adopted and amended pertinent provisions piecemeal throughout decades," "no one clause isolated from its statutory setting could be determinative of a lack of ambiguity or of legislative intent as to the issue presented" (*id.* at 403-404). With this cautionary guidance in mind, I turn to the question before us: whether a statutory framework designed to cut costs evinces a legislative intent to extend the child care leave credit to tier 3 City police officers.

### III.

Three main statutory provisions govern the NYCPFF. Title 13, subchapter 2 of the Administrative Code fully governs the benefits and obligations of tier 1 police officers who are members of the NYCPPF (Administrative Code § 13-214 [defining a tier 1 member as "(a) member whose benefits (other than a supplemental retirement allowance) are prescribed by this subchapter and who is not subject to the provisions of article eleven, article fourteen or article fifteen of the retirement and social security law"]). Tier 2 police officers, defined as officers joining the force between July 1, 1973 and July 1, 2009, are subject to RSSL article 11 as well as the provisions of the Administrative Code (*see* RSSL 440[c]; §§ 500-520). Tier 3 police officers, defined as officers joining the force after July 1, 2009, are subject to RSSL article 14 (*see* RSSL 440 [c]; 550 [a]; §§ 440-451). The parties dispute the applicability of the Administrative Code to officers in tier 3.

While Administrative Code § 13-218 generally discusses service credits and their applicability for police officers, RSSL articles 11 and 14 also have general provisions on service credits. In particular, RSSL 513 discusses when and how service may be credited for employees and largely parallels RSSL 446 (*compare* RSSL 513 *with* RSSL 446). Additionally, RSSL 501 provides two definitions for "credited" and "creditable" service. "Credited service" is defined as "service which has been credited to a member pursuant to section [513] or which was credited to such member in a public retirement system of the state before such member became subject to this article and which is allowable as previous service pursuant to section [513]" (RSSL 501 [3]). "Creditable service" is defined as "service which qualifies to be counted as credited service pursuant to section [513]" (RSSL

501 [4]). However, whereas article 14 defines credited and creditable service solely by reference to RSSL 513, RSSL article 11's "Definitions" section does not provide a definition for credited and creditable service (*see* RSSL 450), indicating that the permissible forms of creditable service for tier 2 members under RSSL article 11 are not confined to the RSSL. More to the point, RSSL 513, which governs credit for service, does not provide a child care leave credit for police officers in tier 3.

RSSL 519 (a) provides that,

> "[a]ny other provision of this chapter, of the state education law or of the administrative code of the city of New York, or rules and regulations thereunder, relating to the reemployment of retired members, transfer of members and reserves between systems and procedural matters shall apply to members covered under this article during the duration thereof unless inconsistent herewith."

RSSL 519 (a), then, limits the interaction between article 14 and the Administrative Code by specifically cabining the applicability of the Code to those enumerated subjects, i.e., reemployment of retired members, transfer of members and reserves between systems, and procedural matters. This Court has "consistently interpreted statutes . . . under the maxim *expressio unius est exclusio alterius* such that 'where a law expressly describes a particular . . . thing . . . to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded'" (*People v Page*, 35 NY3d 199, 206-207 [2020], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240). The fact that RSSL 519 (a) excludes substantive benefits from its list of Administrative Code provisions that apply to article 14 is therefore an "irrefutable" sign that the legislature did not intend for the substantive benefits provided under the Code to apply to tier 3 employees.

Administrative Code § 13-218 (h), enacted in 2000, provides a child care leave credit to police officers:

> "Notwithstanding the provisions of subdivision c of this section, any member who is absent without pay for child care leave of absence pursuant to regulations of the New York city police department shall be eligible for credit for such period of child care leave provided such member files a claim for such service credit with the pension fund by December thirty-first, two thousand one or within ninety days following termination of the child care leave, whichever is later, and contributes to the pension fund an amount which such member would have contributed during the period of such child care leave, together with interest thereon. Service credit provided pursuant to this subdivision shall not exceed one year of credit for each period of authorized child care leave. In the event there is a conflict between the provisions of this subdivision and the provisions of any other law or code to the contrary, the provisions of this subdivision shall govern"

"Membership" of the NYCPPF is defined as, "all persons in city-service, as defined in this subchapter, in positions in the competitive class of the civil service, who shall serve probationary periods, or who shall receive permanent appointments in the police force after the time when this section shall take effect" (Administrative Code § 13-215 [a] [1]; *see also* Administrative Code § 13-214 ["'Member' shall mean any person included in the membership of the pension fund as provided in section 13-215 of this subchapter]). "City service" is defined as "service in the police force in the department" (Administrative Code § 13-214 [3]). Section 13-218 (h), which permits out-of-service time spent on child care leave to be credited, therefore conflicts with RSSL 513 (a) (2), which prohibits members from receiving "retirement credit for any day that [they are] not on the payroll of the state, a political subdivision thereof, or a participating employer." Moreover, and critically, no

police officers were classified in tier 3 when the legislature enacted Administrative Code § 13-218 (h) as a result of more than two decades of legislative action continuing to place newly hired police officers in tier 2—a practice that continued for nearly a decade after the enactment of § 13-218 (h). Thus, contrary to the majority's view, there is ambiguity as to whether "any member" as used in the Code even applies to tier 3 police officers when RSSL article 14 prohibits such credit and does not adopt the exception in § 13-218 (h).

Articles 11 and 14 of the RSSL and Administrative Code § 13-218 (h) can be harmonized, however, by contextualizing these various statutory provisions against the backdrop of the intended purpose of tier 3: reduction of the ballooning costs associated with retirement benefits for public employees by eliminating the costly special treatment of selected groups. The legislature's intent is clear from the structure of the pension scheme, wherein section 13-218 (h)'s more generous benefits apply only to tier 1 and 2 employees (whose numbers are only decreasing over time), and not to new hires who join as tier 3. That interpretation is further supported by legislative enactments of the same child care credit benefit for correction officers.

In 2004, the legislature enacted Administrative Code § 13-107 (k), which provides:

> "Notwithstanding the provisions of subdivision c of this section, any correction member who is absent without pay for child care leave of absence pursuant to regulations of the New York city department of correction shall be eligible for credit for such period of child care leave provided such member files a claim for such service credit with the retirement system by December thirty-first, two thousand four or within ninety days following termination of the child care leave, whichever is later, and contributes to the retirement system an amount which such member would have contributed during the period of such child care leave, together with interest thereon. Service credit

provided pursuant to this subdivision shall not exceed one year of credit for each period of authorized child care leave. In the event there is a conflict between the provisions of this subdivision and the provisions of any other law or code to the contrary, the provisions of this subdivision shall govern."

By the next session, in 2005, the legislature enacted RSSL 513 (h), which also provides the same child care credit to tier 3 correction officers with a limitation:

"Notwithstanding any other provision of this section, any general member in the uniformed correction force of the New York city department of correction who is absent without pay for a child care leave of absence pursuant to regulations of the New York city department of correction shall be eligible for credit for such period of child care leave provided such member files a claim for such service credit with the retirement system by December thirty-first, two thousand five or within ninety days of the termination of the child care leave, whichever is later, and contributes to the retirement system an amount which such member would have contributed during the period of such child care leave, together with interest thereon. Service credit provided pursuant to this subdivision shall not exceed one year of credit for each period of authorized child care leave. In the event there is a conflict between the provisions of this subdivision and the provisions of any other law or code to the contrary, the provisions of this subdivision shall govern, provided, however, that the provisions of this subdivision shall not apply to a member of the uniformed force of the New York city department of correction who is a New York city uniformed correction/sanitation revised plan member."

There would have been no need to amend the RSSL if, as the majority concludes, the Code sets the benefit for all employees irrespective of tier.

The legislative history is particularly illuminating on this point. According to the sponsor's memorandum, the reason for the 2005 addition to RSSL 513 was to expand the child care credit to tier 3 correction officers whose coverage had been "accidentally omitted

from the original bill," which amended only the Administrative Code and therefore only covered officers in tiers 1 and 2 (Sponsor's Mem, Bill Jacket, L 2005, ch 477).

In 2012, the legislature created "tier 3 revised," which applied to police officers as well as correction officers entering service after April 1, 2012 (L 2012, ch 18, §§ 25, 26). This bill simultaneously amended subdivision h of RSSL 513 and added the following language: "the provisions of this subdivision shall not apply to a member of the uniformed force of the New York city department of correction who is a New York city uniformed correction/sanitation revised plan member" (RSSL 513 [h]; L 2012, ch 18, § 21). Thus, just three years after the Governor's previous veto of the legislative extension of tier 2, the legislature amended article 14 and eliminated the child care credit benefit for correction officers "in order to equate their benefits with [t]ier 3 police/fire benefits" (Mem in Support, Bill Jacket, L 2012, ch 18, at 10). This amendment to the RSSL reflects the legislature's understanding that, to alter the benefits afforded to tier 3 correction officers, they were required to amend the RSSL and *not* the Administrative Code.[1]

---

[1] The majority states that "the views that a member or certain members of the State Senate expressed with respect to [the Child Care Credit Law of 2000] are of minimal value" (majority op at 9 n 4). Not so. In *Caprio v New York State Department of Taxation & Finance*, we stated that "[w]hile '[t]he Legislature has no power to declare, retroactively, that an existing statute shall receive a given construction when such a construction is contrary to that which the statute would ordinarily have received . . . this Court has long stated that, 'when the Legislature does tell us what it meant by a previous act, its subsequent statement of earlier intent is entitled to very great weight'" (25 NY3d 744, 755 [2015], quoting *Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293, 304 [1961] and *Matter of Chatlos v McGoldrick*, 302 NY 380, 388 [1951]). As in *Caprio*, "we cannot say that the Legislature has construed the statute in a manner that is contrary to the construction it would ordinarily receive" and, therefore, "due consideration" is owed to the "underlying intent of the" legislature in enacting the prior statute (25 NY3d at 755).

IV.

The majority adopts a restrictive interpretation of the language in section 13-218, without consideration of the statutory context or the legislative history relevant to the State's integrated public pension system. That approach contravenes *Matter of Sutka*'s interpretive methodology and ignores that "[t]ier 3 was a comprehensive retirement program designed to 'provid[e] uniform benefits for all public employees and eliminat[e] the costly special treatment of selected groups . . . inherent in the previous program'" (*Lynch*, 23 NY3d at 765 quoting Mem from Robert J. Morgado [Secretary to the Governor] to Judah Gribetz [Governor's Counsel], Bill Jacket, L 1976, ch 890). Tier 3 was intended to rein in costs, not to extend benefits. But as a result of the majority's holding, the credit allowance is available to tier 3 police officers, even though the legislature expressly adopted a system intended to reduce benefits for those entering service in this tier.

As is oft the case, the legislative scheme represents difficult political and fiscal choices, choices left to the members of our State's legislature, not the courts. I dissent.

Order reversed, with costs, and judgment of Supreme Court, New York County, reinstated. Opinion by Judge Fahey. Judges Stein, Garcia, Wilson and Feinman concur. Judge Rivera dissents and votes to affirm in an opinion in which Chief Judge DiFiore concurs.

Decided October 20, 2020